## INSURED LLOYDS INS. CO. *v.*
## ARKANSAS TRUCK PARTS, INC.

CA 84-29                                    681 S.W.2d 403

Court of Appeals of Arkansas
Division I
Opinion delivered December 19, 1984

*Laser, Sharp & Huckabay, P.A.*, for appellant.

*Hoofman & Bingham, P.A.*, for appellee.

MELVIN MAYFIELD, Judge. Insured Lloyds Insurance Company appeals the trial judge's decision granting appellee judgment on a garage liability policy. The appellee is engaged in the repair and sale of used cars and in the sale of used automotive parts. The policy was

purchased from a local insurance agency and obtained by it from Lloyds' general agent, Arkansas All Risks, Inc. The policy provided. "Automobile Hazard 1." coverage as follows:

> (1) the ownership, maintenance or use (including loading or unloading) of any automobile for the purpose of garage operations, and (2) the occasional use for other business purposes and the use for non-business purposes of any automobile owned by or in charge of the named insured and used principally in garage operations, and (3) the ownership, maintenance or use of any automobile owned by the named insured while furnished for the use of any person.

The garage liability master endorsement, expressly made a part of the policy, provides space for the listing of "furnished automobiles" and "service vehicles." No vehicle is listed in the space allotted to either category and at the top of each space the words "no coverage is provided" have been typed. It is undisputed that appellee had no "service vehicles" at the time the policy was issued. The evidence does not establish whether appellee did or did not have any "furnished automobiles" at the time; apparently, this is because the parties were not concerned with the insurance coverage of "furnished automobiles."

Appellee subsequently acquired a 1979 GMC wrecker and, during the period covered by the policy, the wrecker was involved in an accident when appellee's driver was delivering some parts and turned in front of another truck. Lloyds denied that its policy afforded liability coverage for the damages to the other truck. Appellee paid that claim and brought this suit against Lloyds. The judge, sitting without a jury, found the policy ambiguous, resolved the ambiguity against Lloyds, and gave appellee judgment for the amount it paid to settle the claim, plus 12% penalty, and attorneys' fees. It is Lloyds' contention that the policy is unambiguous and that it did not afford liability coverage for the wrecker.

We start with appellee's assertion that a garage

liability policy is unique. The case of *Morrison* v. *Anchor Casualty Co.*, 53 Wash.2d 707, 336 P.2d 869 (1959), is cited. The opinion in that case states:

An insurance company lawyer, writing in the *Insurance Law Journal* (October, 1954), p. 668, commences an article . . . with the following statement:

"The Automobile Garage Liability Policy is one of the most complex, and perhaps least understood, liability forms in use today. Its complexity is largely attributable to the breadth of coverage, that is, it embraces a multiplicity of hazards which otherwise are written under separate policies."

The court's opinion in *Morrison* also points out that a "very important distinction" between the automobile garage liability policy and standard automobile liability insurance is that the garage policy does not insure a particular automobile. The appellee says this distinction is very important in the instant case.

Turning to the master endorsement, to which we have referred, the appellee points to the fact that the space provided for the listing of "service vehicles" does not provide a column for the listing of the premium charge for such vehicles whereas the space for the listing of "furnished automobiles" does provide a column for the listing of the premium charge for those vehicles. Appellee then asks: "If a category is provided under furnished automobiles for a premium charge on the appellant's form, why is there not a category under the service vehicle portion for a premium charge?" The appellee answers its own question as follows: "The answer is that a premium has already been charged for service vehicles under the advance premium provision of hazard 1 coverage which used a payroll basis to determine the extent of the exposure for which the appellant must charge."

We have to agree with appellee's answer. The Hazard 1 provision says it covers "(1) the ownership, maintenance

or use (including loading or unloading) of any automobile for the purpose of garage operations. . . ." It is undisputed that the wrecker involved in this case was owned by the appellee and was being used in appellee's garage operations at the time it collided with the other vehicle. It is undisputed that an advance premium had already been charged and collected for the policy's Hazard 1 liability coverage. It is undisputed that this advance premium was based on appellee's payroll and that the payroll could be audited.

The appellee next points to the space on the master endorsement where service vehicles could be listed and calls our attention to the fact that printed under that space is the following: "Coverage is automatically extended to newly acquired Service Vehicles during the policy period so long as the Named Insured notifies the Company within 30 days of such acquisition and proper premium is charged therefor." Since the evidence shows that the wrecker was acquired by appellee during the policy period and that appellee's insurance agent promptly notified Lloyds' general agent of that fact, the next question is whether the "proper premium" has been charged.

Appellee has the same answer to that question. The proper premium was charged when the advance premium based on the appellee's payroll was charged. Appellee's insurance agent testified to the same effect. On the other hand, a witness from Lloyd's general agent, Arkansas All Risks, Inc., testified to the contrary. He would not say that a party who has Hazard 1 coverage and adds a service vehicle must, in every case, pay an additional premium, but he did say that *Lloyds* would charge an additional premium in that situation. The next question is: Did Lloyds have the right under its contract to charge this additional premium as a condition for coverage?

Lloyds places great emphasis on the following evidence. After the appellee acquired the wrecker, the local agent wrote Lloyds' general agents stating:

Please add the following vehicle to this policy:

1979 GMC Wrecker . . .

. . .

> We want liability coverages & Fire, Theft, CAC & Collision - 250 deductible will be sufficient. Let me know if you need other information. I would appreciate a quote.

Lloyds' general agent replied to that letter, according to appellee's agent, with a quote of $1100.00. Appellee's local agent testified that he told Lloyds' general agent that the Hazard 1 coverage already afforded appellee liability insurance and that he was able to get the collision coverage with another company at a cheaper rate. Appellee's agent admitted that he ultimately received a letter from Lloyds' general agent stating that in order to provide liability coverage for the wrecker the appellee would have to buy a commercial automobile policy or add it to his garage policy and pay a premium of $820.00. It is also admitted that this quote was not accepted and that the premium quoted was not paid.

However, as we have said, the question is whether Lloyds had the right to charge this additional premium as a condition for liability coverage of the wrecker while used in the appellee's garage operation. We have to agree with the appellee that the insurance policy is, at least, ambiguous in that regard. We have held that an ambiguity must be construed against the insurance company preparing the contract, and that the policy will be construed so as to provide coverage unless it is patently unreasonable to do so. *MFA Mut. Ins. Co.* v. *State Farm Mut. Auto. Ins.*, 268 Ark. 746, 595 S.W.2d 706 (Ark. App. 1980). Applying that rule, the trial judge found for the appellee. We do not set aside the trial judge's findings of fact unless clearly against the preponderance of the evidence. ARCP 52(a). We think his decision in this case must be affirmed.

Appellant argues, in the alternative, that if liability coverage is found to exist the amount recoverable should

be reduced by the $250.00 deductible referred to on the master endorsement. While it is not clear that this deductible applies to the coverage involved in this case, the short answer is that the issue was not raised in the trial court and cannot be raised here for the first time. *Old American Life Ins. Co.* v. *Williams,* 241 Ark. 250, 407 S.W.2d 110 (1966); *Tompos* v. *City of Fayetteville,* 280 Ark. 435, 658 S.W.2d 404 (1983).

Affirmed.

COOPER and CORBIN, JJ., agree.