Charles E. SMITH v. PRUDENTIAL PROPERTY
and CASUALTY INSURANCE COMPANY

99-378 10 S.W.3d 846

Supreme Court of Arkansas
Opinion delivered February 10, 2000
[Petition for rehearing denied March 9, 2000.]

*Lyons, Emerson, & Cone, P.L.C.*, by: *Scott Emerson*, for appellant.

*Wright, Lindsey & Jennings, LLP*, by: *Patrick J. Goss*, for appellee.

TOM GLAZE, Justice. The court of appeals certified this case to us on the grounds that there is a perceived conflict in Arkansas insurance case law. The issue certified is whether, when an ambiguity exists in the terms of an insurance policy, that ambiguity is a question of law to be decided by the court or a question of fact for the fact-finder. Our court took jurisdiction under Ark. Sup. Ct. R. 1-2(b)(2) and (5) (1999).

The parties have stipulated to the relevant facts, agreeing that the primary issues depend upon the construction of clauses in insurance policies appellant Charles E. Smith obtained from appellee Prudential Property and Casualty Insurance Co. The parties agree that, when Smith was riding his motorcycle on December 19, 1997, Sylvia Midgett negligently pulled her car in front of Smith, colliding with Smith and causing him to sustain severe injuries and damages in excess of $300,000.00. Midgett had insurance coverage with limits of only $100,000.00, so Smith filed a claim under his underinsured motorist (UIM) coverage. While his motorcycle was uninsured, Smith had $100,000.00 UIM coverage each on his 1978 El Camino and 1988 Silverado. Smith claimed not only that his injuries were covered by his UIM policies, but also that he was

entitled to stack his two policies in order to recover the total amount of $200,000.00—an amount not covered by Midgett's insurance.

Prudential denied Smith's claims, stating that Smith had no insurance on his motorcycle and that he was not an insured under the UIM coverage clauses as defined in his policies. Prudential further countered that, even if he was an insured under his UIM coverage, Smith could not stack his two policies in order to collect the $200,000.00 in UIM coverage. At trial, Smith was the only witness, and his testimony was brief. In fact, Prudential never cross examined Smith, but instead moved for a directed verdict at the end of Smith's testimony, reiterating its argument that Smith was not an insured and was not covered under his UIM policy provisions.

The trial court denied Prudential's directed verdict motion, ruling that the terms defining an insured in Smith's policies were at best ambiguous, and, therefore, presented a question of fact for the jury. The trial court further held that the language in Smith's policies bearing on whether UIM coverage could be stacked was also ambiguous, and should be submitted as a fact question to the jury.

Smith also moved for a directed verdict, and in doing so, he agreed with the trial court that ambiguities existed in the policies. However, he disagreed with the trial court's submitting the case to the jury, since it was his contention that, as a matter of law, that the trial court was obliged to interpret and adopt the UIM coverages in Smith's favor. The trial court denied Smith's motion, and submitted all issues to the jury.

The jury returned answers to interrogatories, finding Smith was not an insured under the UIM coverage provisions of his automobile policies, that Smith was not entitled to stack his UIM policies, and he was not insured under the "additional car accident coverage" provisions of the policies. Accordingly, the trial court entered a judgment dismissing Smith's complaint with prejudice, from which Smith brings this appeal.

First, we point out that both Smith and Prudential initially contended below that the UIM coverage clauses contained in Smith's policies are *un*ambiguous. Smith, on the one hand, asserted he was clearly an insured for UIM coverage purposes in these

circumstances, and Prudential, on the other hand, contended Smith was not covered as an insured under the policies' terms. The trial court rejected the parties' respective contentions, and we believe it did so correctly; the trial court, after studying the policy UIM coverage terms, found the language ambiguous. While we believe the trial court was right in finding that an ambiguity exists, we ultimately disagree with the trial court's ruling that the ambiguity was a question of fact, which must be submitted to the jury.

In reaching its conclusion that it was ambiguous as to whether Smith was covered for UIM purposes, the trial court examined Smith's policies. On page 5 of Part 5, captioned "Underinsured Motorists . . . If You Are Hit By A Motor Vehicle That Is Underinsured," the following relevant language appears:

OUR OBLIGATIONS TO YOU (PART 5)

UNDERINSURED MOTORISTS BODILY INJURY COVERAGE

UNDERINSURED MOTORISTS PROPERTY DAMAGE COVERAGE

If **you** have these coverages (see the Declarations), we will pay up to **our** limit of liability for **bodily injury** or **property damage** that is covered under this part when an insured (*whether or not occupying a* **car**) or an insured's **car** is struck by an underinsured **motor vehicle**. [Italics supplied.] **Our** payment is based on the amount than an insured is legally entitled to recover for **bodily injury** or **property damage** because:

\* **THE OWNER OR DRIVER IS UNDERINSURED**

The owner or driver responsible for the accident has liability insurance or a liability bond in an amount that is less than the limits shown for this coverage on the Declaration.

The trial court determined that, under the above clause, Smith was an insured and entitled to his UIM coverage limits *whether or not he was occupying a car* when he was struck by an underinsured motorist. In other words, Smith was covered under the terms of the above UIM provisions when he was riding a motorcycle, not a car, when Midgett's car hit Smith. Furthermore, the trial court read the definition section of Smith's policies where it defined the term *YOU* to mean the person shown as the *named insured on the Declara-*

*tions* of this policy. Unquestionably, Smith was the named insured in the Declaration issued with his automobile policies.

However, Prudential contended below that, under other UIM policy language, Smith was not an "insured." In this connection, the trial court studied the UIM language on page 6 of Part 5 of Smith's policies relied on by Prudential. That language reads as follows:

WHO IS INSURED (PART 5)

IN YOUR CAR (INCLUDES A SUBSTITUTE CAR)

**You** and a **resident relative** are insured while using **your car** or a substitute **car** covered under this part.

Other people are insured while using **your car** as a substitute **car** covered under this part if **you** give them permission to use it. They must use the **car** in the way **you** intended.

IN A NON-OWNED CAR

**You** and a **resident relative** are insured while using a non-owned car. The owner must give permission to use it. It must be used in the way intended by the owner.

HIT BY A MOTOR VEHICLE

**You** and a **resident relative** are insured if hit by an underinsured motor vehicle while a pedestrian.

Using the immediate foregoing policy language, Prudential contended below (and on appeal) that Smith was only an insured for UIM purposes if he was struck by an underinsured motorist when Smith was in one of his covered cars, a substitute car, another car with the owner's permission, or when he was a pedestrian.

In reading the different UIM provisions relied on by Smith and Prudential, it is evident the policy language is confusing. As the trial court said when it denied Prudential's motion for directed verdict, the UIM policy terms appear to provide Smith coverage on page 5 of Part 5, but then takes away the coverage on page 6.

After the trial court found that Smith's policies contained ambiguities pertaining to UIM coverage, it proceeded to instruct

the jury on the issues. In Instructions Number Ten, Eleven, and Twelve, the trial court directed the jury as follows:

> INSTRUCTION NO. TEN: You are instructed that if any ambiguity exists in a policy of insurance, the terms of that insurance policy are to be strictly construed against the insurance company that drafted the policy. In other words, you are to resolve all doubts as to the meaning of the language used in an insurance policy in favor of the policy holder or insured.

> INSTRUCTION NO. ELEVEN: An ambiguity exists in an insurance policy if there is any doubt or uncertainty as to the meaning of words or provisions in a policy, if there are conflicting provisions in an insurance policy, or if the policy is fairly susceptible to two interpretations.

> INSTRUCTION NO. TWELVE: Policies of insurance are to be liberally construed in favor of providing coverage to an insured.

As the reader can see from the foregoing instructions, the trial court instructed the jury how to determine if an ambiguity exists, even though the trial court had already decided, as a matter of law, that the insurance policies contained an ambiguity. Thus, we conclude the trial court erred, and hold the court should have granted Smith's directed verdict motion on the UIM coverage issue.

 Arkansas's controlling case law on this subject is found in *Southhall v. Farm Bureau Mutual Ins. Co.*, 276 Ark. 58, 60, 632 S.W.2d 420, 421 (1982), where Justice George Rose Smith wrote for the majority court as follows:

> An insurance policy is to be construed strictly against the insurer, who chooses its language. The construction and legal effect of written contracts are matters to be determined by the court, not by the jury, *except* when the meaning of the language depends upon disputed extrinsic evidence. (Emphasis added.)

This court has also held that it is a principle of insurance law established in our state that provisions contained in a policy of insurance must be construed most strongly against the insurance company which prepared it, and if a reasonable construction may be given to the contract which would justify recovery, it would be the duty of the court to do so. *Drummond Citizens Ins. v. Sergeant,* 266 Ark. 611, 588 S.W.2d 419 (1979). It is also a cardinal rule of insurance law that a policy of insurance is to be construed liberally

in favor of the insured and strictly against the insurer or, as more fully stated, if the language employed is ambiguous, or there is doubt or uncertainty as to its meaning and it is fairly susceptible of two interpretations, one favorable to the insured and the other favorable to the insurer, the former will be adopted. *Id.*; *see also Nationwide Mut. Ins. Co. v. Worthey*, 314 Ark. 185, 861 S.W.2d 307 (1993).

■ ■ In the instant case, the parties considered the UIM coverage as an issue dependent merely upon the construction to be given the language contained in the insurance policies. Certainly, Prudential offered no extrinsic evidence bearing on the meaning of the policy language. Although the meaning of an ambiguity may become a question for the fact-finder if parol evidence has been admitted to resolve that ambiguity, *see Minerva Enter., Inc. v. Bituminous Cas. Corp.*, 312 Ark. 128, 851 S.W.2d 403 (1993), where the meaning of the language of a written contract does not depend on disputed extrinsic evidence, the construction and legal effect of the contract are questions of law. *See Duvall v. Massachusetts Indem. & Life Ins. Co.*, 295 Ark. 412, 748 S.W.2d 650 (1988); *Security Ins. Co. v. Owen*, 252 Ark. 720, 480 S.W.2d 558 (1972). Accordingly, we hold that, as to the UIM coverage issue, the trial court erred in submitting that issue to the jury rather than directing a verdict in Smith's behalf.

■ We mention at this point that the court of appeals, in recommending certification of this case, suggested that *Farm Bureau Mutual Insurance Co. v. Whitten*, 51 Ark. App. 124, 911 S.W.2d 270 (1995), is in conflict with other Arkansas cases. We agree. Upon examining that case, we have determined that it was wrongly decided. To the extent that *Whitten* holds that when the terms of a written contract are ambiguous, its meaning is always a question of fact, that case is overruled.

On the question of whether Smith is entitled to stack his two policies to obtain the $100,000.00 UIM coverage provided in both of them, we reach a different result. We do so because our review of Smith's policies reflects no ambiguity as to the stacking issue. In fact, the policies contain anti-stacking provisions which prevent such double coverage. On this point, Smith largely relies on page 8 of Part 5 of the policy which relates that the limit of liability is stated on the declarations page and his declaration page shows that

he has coverage on two cars. Thus, he claims he should be able to stack his coverage.

■ Prudential, however, refers to the general provisions in the policies captioned "Limit of Coverage" which, in pertinent part, provide that "Coverages on other cars insured by us cannot be added to or stacked on the coverage of the particular car involved." Such anti-stacking language clearly prevents Smith from obtaining UIM coverage from both of his policies. Because the trial court erred in finding an ambiguity on this stacking issue, we agree that Prudential was entitled to a directed verdict.

■ For the above reasons, we reverse and remand with directions for the trial court to enter a judgment in Smith's favor, but limiting the coverage amount to $100,000.00. In light of our holding in the direct appeal, we also dismiss Prudential's cross-appeal.[1]

SMITH, J., dissents.

LAVENSKI R. SMITH, Justice, dissenting. I join the majority in holding that the subject policy contains no ambiguity as to coverage stacking. I also join in the overruling of *Farm Bureau Mutual Insurance Co. v. Whitten, supra.* However, I disagree with the court's holding that the subject policy contains an ambiguity as to underinsured motorist coverage. In December of 1997, Charles Smith purchased insurance for his two Chevrolet trucks. The policy in question, when read as a whole, contains no ambiguity as to the identity of those covered by underinsured motorist coverage. The policy states that the company will pay "when an insured (whether or not occupying a car)" is struck by an underinsured motor vehicle. The trial court and the majority find ambiguity in the parenthetical language. No ambiguity exists if the policy provisions contained in Part 5 are reasonably read together. Part 5, as each other Part in the policy, contains sections which address the company's obligations, the insured's obligations, cars that are covered, who is insured, losses the company will pay for and how the compay will settle the claims. The "WHO IS INSURED" section of part 5 describes three circumstances where the underinsured coverage applies. The first is when the policy holder or a relative are in the

---

[1] Prudential had filed a cross-appeal, suggesting that, despite the fact that the jury returned a verdict in its favor, the trial court erred in failing to find the policies to be unambiguous and granting Prudential's motion for directed verdict.

policy holder's car that is insured by policy. The second covered circumstance is where the policy holder or relative are in a non-owned car by permission of the owner. The third and final circumstance is where the policy holder or relative are hit by an underinsured motorist while a pedestrian. Neither of these include a circumstance where the policy holder is riding in or on an uninsured motor vehicle owned by the policy holder. Mr. Smith simply did not buy that kind of coverage. Construing the provisions in the context of Part 5, I conclude "whether or not occupying a car" is susceptible of only one reasonable interpretation and that is either riding in a car or walking as a pedestrian. It should not be necessary that a policy eliminate every conceivable alternate construction in order to avoid an ambiguity finding.

I respectfully dissent.