Raymond C. SWEEDEN, *et al.*
*v.* FARMERS INSURANCE GROUP, *et al.*

CA 99-988 30 S.W.3d 783

Court of Appeals of Arkansas
Division II
Opinion delivered November 15, 2000

*Lona McCastlain* and *David A. Hodges*, for appellants Raymond C. Sweeden and Ileen P. Sweeden.

*Rice, Adams, Beckham & Pulliam*, by: *Ben E. Rice*, for appellants Randall A. White, Kenneth White, and Brenda White.

*Huckabay, Munson, Rowlett & Tilley, P.A.*, by: *Julia L. Busfield* and *Bruce Munson*, for appellees.

JOHN MAUZY PITTMAN, Judge. The issues in this appeal concern the extent of liability coverage available under three separate automobile insurance policies, each having per-person bodily injury limits of $100,000. The policies were issued to appellant Kenneth White (and, in the case of one policy, Kenneth White and Kenneth's Auto Sales) by appellees Mid-Century Insurance Company, Farmers Insurance Company, and Farmers Insurance Exchange, all members of the Farmers Insurance Group of Companies. Coverage issues arose in 1996 when an automobile accident occurred between a vehicle driven by appellant Raymond Sweeden and a vehicle driven by Kenneth White's son, Randall. As a result of the accident, Sweeden and his wife, appellant Ileen Sweeden, sued the White family seeking compensation for Raymond's injuries and for Ileen's loss of consortium. Before that suit was resolved, however, the Sweedens filed a complaint for declaratory judgment against appellees claiming that, to obtain redress for their injuries, liability coverage should be available under all three of the Whites' insurance policies. Appellees moved for summary judgment and argued that, as a matter of law, their coverage obligation was limited

to the $100,000 limit of one of the policies. The circuit judge agreed and granted summary judgment in their favor. We affirm.

The accident in which Raymond Sweeden was injured occurred on May 9, 1996. His vehicle was struck from the rear by a 1989 Chevrolet C10 pickup driven by seventeen-year-old Randall White. Following the accident, the Sweedens sued Randall and his parents, Kenneth and Brenda White, alleging that the accident was proximately caused by Randall's negligence. They further alleged that Randall's negligence should be imputed to Kenneth and Brenda White pursuant to Ark. Code Ann. § 27-16-702 (Supp. 1999). That statute provides that the negligence of a minor driver shall be imputed to the person who either signs or is authorized to sign the minor's driver's license application.

As a result of the Sweedens' lawsuit against the Whites, questions arose concerning the extent of liability coverage owed by appellees under the following three policies: 1) a policy issued by Mid-Century Insurance Company to Kenneth White on the 1989 Chevrolet C10 pickup with bodily injury liability limits of $100,000 for each person and $300,000 for each occurrence (hereafter, "the Mid-Century policy"); 2) a policy issued by Farmers Insurance Company to Kenneth White on a 1995 Taurus with bodily injury liability limits of $100,000 for each person and $300,000 for each occurrence (hereafter, "the Taurus policy"); and 3) a commercial garage policy issued by Farmers Insurance Exchange to Kenneth White and Kenneth's Auto Sales with liability limits of $100,000 for each accident (hereafter, "the garage policy"). Appellees acknowledged that $100,000 in coverage was available under the Mid-Century policy, but denied that any further amounts were due under any of the policies.

To resolve the coverage issues, the Sweedens filed the declaratory-judgment complaint that is the subject of this appeal. They sought a declaration that liability coverage was available under all three of the White's policies and that Ileen Sweeden's loss-of-consortium claim should not be included in the per-person bodily injury limits of any one of the policies. In effect, they asserted that up to $400,000 in liability coverage was available under the policies: $300,000 as the total per-person liability limits on the policies, plus another $100,000 for Ileen's loss-of-consortium claim. Kenneth and Brenda White, who were named as defendants in the action along

with the appellee insurance companies, cross-claimed against appellees and agreed with the Sweedens that more than $100,000 in coverage was owed.

On July 25, 1997, appellees filed a motion for summary judgment arguing that, as a matter of law, the total limit of liability coverage available to the White family was $100,000. They contended that: 1) Ileen Sweeden's loss-of-consortium claim was derivative and therefore included in the $100,000 limit of liability for Raymond Sweeden's bodily injury; 2) there was no coverage under the Taurus policy because it excluded coverage for any of Kenneth White's vehicles other than the Taurus; and 3) there was no coverage under either the Taurus policy or the garage policy because they contained "other insurance" clauses that limited coverage to $100,000. Copies of all three policies were attached to the motion. The Sweedens responded to the motion for summary judgment by arguing that: 1) Ileen Sweeden's loss-of-consortium claim was entitled to be treated as a separate bodily injury; and 2) the "other insurance" clauses in the policies were ambiguous and against public policy. The Sweeden's response was adopted by appellants Kenneth and Brenda White.

On November 10, 1997, Circuit Judge Lance Hanshaw denied the motion for summary judgment on the ground that factual issues remained in dispute. Several months later, judgment was entered in the Sweedens' tort case against the White family. The judge found that Randall White was guilty of negligence and that his negligence should be imputed to Kenneth and Brenda White. He awarded $300,000 in damages to Raymond Sweeden and $100,000 to Ileen Sweeden. On February 18, 1999, appellees renewed their motion for summary judgment, asserting the same arguments they had previously made. Following a hearing, Judge Phillip Whiteaker, to whom Judge Hanshaw had transferred the case, granted summary judgment in favor of appellees. The Sweedens and the Whites bring their appeal from that ruling.

■ In reviewing summary-judgment cases, we determine whether the trial court's grant of summary judgment was appropriate based on whether the evidence presented by the moving party left a material question of fact unanswered. *Norris v. State Farm Fire & Cas. Co.*, 341 Ark. 360, 16 S.W.3d 242 (2000). The moving party always bears the burden of sustaining a motion for summary judg-

ment. *Youngman v. State Farm Mut. Auto. Ins. Co.*, 334 Ark. 73, 971 S.W.2d 248 (1998). All proof must be viewed in the light most favorable to the resisting party, and any doubts must be resolved against the moving party. *Id.* In a case such as this one where there are no disputed facts, our review must focus on the trial court's application of the law to those undisputed facts. *See id.*

 The issues in this case involve the construction of language in various insurance policies. A contract is unambiguous and its construction and legal effect are questions of law when its terms are not susceptible to more than one equally reasonable construction. *See Singh v. Riley's, Inc.*, 46 Ark. App. 223, 878 S.W.2d 422 (1994). However, an ambiguity may arise when the language in an insurance policy is susceptible to more than one reasonable interpretation. *See Keller v. Safeco Ins. Co.*, 317 Ark. 308, 877 S.W.2d 90 (1994). Policy language is to be construed in its plain, ordinary, and popular sense. *See Norris v. State Farm, supra.* The terms of an unambiguous insurance policy are not to be rewritten under the rule of strict construction against an insurer to bind an insurer to a risk that is plainly excluded and for which it was not paid. *Shelter Mut. Ins. Co. v. Williams*, 69 Ark. App. 35, 9 S.W.3d 545 (2000).

 The first policy language we discuss on appeal is an exclusionary clause contained in the Taurus policy. The policy excludes from liability coverage "bodily injury...arising out of the ownership, maintenance or use of any vehicle other than your insured car which is owned by or furnished or available for regular use by you or a family member." Based on the record before us, the term "your insured car" is defined in the policy for purposes of this issue as the 1995 Taurus. That being the case, we interpret the clause to exclude coverage for bodily injury arising out of the use of any vehicle owned by Kenneth White, other than the Taurus. This type of clause is known as an "owned-but-not-insured" exclusion. *See Clampit v. State Farm Mut. Auto. Ins. Co.*, 309 Ark. 107, 828 S.W.2d 593 (1992) (an underinsured motorist case); *Crawford v. Emcasco Ins. Co.*, 294 Ark. 569, 745 S.W.2d 132 (1988) (an uninsured motorist case). Such clauses preclude recovery for accidents involving a vehicle that is owned by the named insured but that is not insured under the particular policy in question. *See Clampit v. State Farm, supra.* The rationale behind such a clause was noted in *Clampit* as follows:

> If an insurer is required to insure against a risk of an undesignated but owned vehicle, or a different and more dangerous vehicle of which it has no knowledge, it is thereby required to insure against risks of which it is unaware, unable to underwrite and unable to charge a premium therefor.

*Id.* at 109, 828 S.W.2d at 594.

■ Here, Kenneth White owned the C10 pickup involved in the accident, but the pickup was not insured under the Taurus policy. Therefore, under the terms of the "owned–but–not–insured" clause, the Taurus policy provides no liability coverage for bodily injury arising out of the use of the C10 pickup.

■ Having determined that no coverage is owed under the Taurus policy, we address the next set of issues with reference to appellees' coverage obligation under the garage policy. Unlike the Taurus policy, the garage policy has no "owned–but–not–insured" exclusion. In fact, one of the unique features of a garage policy is that, unlike standard automobile liability policies, it does not insure a particular automobile. *See Insured Lloyds Ins. Co. v. Arkansas Truck Parts, Inc.*, 13 Ark. App. 165, 681 S.W.2d 403 (1984). Further, appellees do not argue that Randall White's use of the C10 pickup does not constitute a "garage operation" as defined by the policy. Instead, appellees contend that the garage policy contains "anti-stacking" or "other insurance" language that limits coverage when more than one insurance policy is applicable. The relevant provision reads, in pertinent part, as follows:

> TWO OR MORE COVERAGE FORMS OR POLICIES ISSUED BY US
>
> If this Coverage Form and any other Coverage Form or policy issued to you by us or any company affiliated with us apply to the same 'accident', the aggregate maximum Limit of Insurance under all the Coverage Form [sic] or policies shall not exceed the highest applicable Limit of Insurance under any one Coverage Form or policy.

Appellees argue that, because Mid–Century — the company that issued the C10 — policy and Farmers Insurance Exchange — the company that issued the garage policy — are affiliated, this clause limits their combined coverage obligation to the highest applicable

limit under either policy. Thus, they claim, appellants are prohibited from stacking the two policies to obtain coverage of more than $100,000.

The term "stacking" is used to describe a situation where all available policies are added together to create a larger pool from which the injured party may draw in order to compensate him for his loss where a single policy is not sufficient to make him whole. Neil Chamberlin and J. Stephen Holt, *Why Arkansas Should Overturn Its Anti-Stacking Precedent: A Look At Aggregating Uninsured and Underinsured Motorist Coverage*, 21 UALR L.J. 413 (1999). Insurance companies have often sought, by their policy language, to prevent insureds from stacking coverage. *See id.* Anti-stacking clauses have been upheld by our courts so long as they are not ambiguous. *See generally Smith v. Prudential Prop. & Cas. Ins.*, 340 Ark. 335, 10 S.W.3d 846 (2000); *Youngman v. State Farm Mut. Auto. Ins. Co.*, 334 Ark. 73, 971 S.W.2d 248 (1998); *MFA Mut. Ins. Co. v. Wallace*, 245 Ark. 230, 431 S.W.2d 742 (1968); *Shelter Mut. Ins. Co. v. Williams*, 69 Ark. App. 35, 9 S.W.3d 545 (2000); *Kanning v. Allstate Ins. Cos.*, 67 Ark. App. 135, 992 S.W.2d 831 (1999). The issue of stacking has arisen most often in the context of uninsured or underinsured motorist coverage. In fact, all of the above-cited decisions involve either uninsured or underinsured coverage. This case represents the first time that our courts have addressed the stacking issue with regard to automobile liability insurance. We note however, that stacking of liability coverage has been addressed in other jurisdictions. *See, e.g., Lonergan v. Nationwide Mutual Insurance Co.*, 663 A.2d 480 (Del. Super. 1995), a case with facts very similar to the case at bar. *See also* collected cases at 12 *Couch on Insurance 3d* § 169:109 (1999) and 7A AM. JUR. 2d *Automobile Insurance* § 427 (2d ed. 1997).

The Sweeden appellants and the White appellants raise numerous issues regarding the anti-stacking language in the garage policy. For the sake of clarity and convenience, we will discuss each argument separately.

*The Term "Affiliated" As Used in the Garage Policy's*
*"Other Insurance" Clause Is Ambiguous*

■ The garage policy's "other insurance" clause places a limit on the insurance company's coverage obligation in situations where another applicable policy has been "issued to you by us or any company *affiliated* with us." (Emphasis added.) Both the Sweeden appellants and the White appellants argue that the term "affiliated" is ambiguous, *i.e.*, that the insured may not have known that Mid-Century and Farmers Insurance Exchange were affiliated. As we pointed out earlier, an ambiguity may arise in an insurance contract when a term is susceptible to more than one equally reasonable construction. *Keller v. Safeco Ins. Co., supra.* Appellants are unable to demonstrate on appeal a reasonable construction of this particular contract that might have led an insured to believe that Mid-Century and Farmers Insurance Exchange were *not* affiliated. The declarations page of the garage policy lists both Mid-Century and Farmers Insurance Exchange as being members of the Farmers Insurance Group of Companies. Additionally, the Farmers Insurance Group logo appears at various places throughout both policies. Contracts of insurance should receive a practical, reasonable, and fair interpretation consonant with the apparent object and intent of the parties in light of their general object and purpose. *Shelter Mut. Ins. Co. v. Williams, supra.* Further, different clauses in a contract must be read together and construed so that all of its parts harmonize, if that is at all possible. *Boatmen's Ark., Inc. v. Farmer,* 66 Ark. App. 240, 989 S.W.2d 557 (1999).

We also note that, in making this argument, the Sweeden appellants refer to the case of *Yahr v. Garcia,* 177 Mich. App. 705, 442 N.W.2d 749 (1989), which held that an "other insurance" clause involving policies issued by the same company was ambiguous. However, that case was reversed on appeal to the Michigan Supreme Court for the reasons set forth in the dissent in the appeals court case, among them, that the clause was unambiguous. *See Yahr v. Garcia,* 436 Mich. 872, 461 N.W.2d 363 (1990).

■ In light of all these factors, we decline to reverse the trial judge's grant of summary judgment on the basis of an ambiguity in the word "affiliated."

### *"Other Insurance" Language in Policies Issued by Affiliated Companies Is Per Se Inapplicable*

The Sweeden and White appellants also argue that, because Mid-Century and Farmers Insurance Exchange are affiliated, the "other insurance" clause in the garage policy is inapplicable. As support for their argument, they cite *Woolston v. State Farm Mutual Insurance Co.*, 306 F. Supp. 738 (W.D. Ark. 1969). In *Woolston*, a pedestrian, Jennifer Woolston, was struck and killed by an uninsured motorist. Jennifer's parents owned two policies issued by State Farm, and each of the policies provided $10,000 per person limits on UM coverage. The Woolstons sought coverage under both policies for a total of $20,000. State Farm argued that, due to an "other insurance" clause in their policies, their liability was limited to $10,000. The clause read, in pertinent part that "if the insured has other similar insurance available to him against a loss covered by this coverage, then the damages shall be deemed not to exceed the higher of the applicable limits of liability of this insurance and such other insurance...." The federal court held that the clause was ambiguous because it did not specifically refer to the fact that "other similar insurance" could be another policy issued by the same company.

The *Woolston* case is easily distinguishable from the case at bar. Here, the "other insurance" clause expressly contemplates the possibility that other applicable insurance has been issued by an affiliated company. Such language makes this case more like *MFA Mutual Insurance Co. v. Wallace, supra,* than *Woolston*. In *MFA v. Wallace*, the insurer issued two separate policies to Wallace on two separate vehicles. MFA resisted Wallace's attempt to stack UM coverage under the two policies based on the following clause:

> Other Automobile Insurance In The Company With respect to any occurrence, accident, death, or loss to which this and any other automobile insurance policy issued to the named insured or spouse by the Company also applies, the total limit of the Company's liability under all such policies shall not exceed the highest applicable limit of liability or benefit amount under any one policy.

This particular language was declared unambiguous by the supreme court in the earlier case of *Varvil v. MFA Mutual Insurance Cos.*, 243 Ark. 692, 421 S.W.2d 346 (1967), which involved an attempt to

stack death benefits under an auto policy. In *Wallace*, the supreme court held that this language was not repugnant to the UM statute requiring that certain minimum coverage be afforded an insured.

The *Woolston* court, in holding that State Farm's "other insurance" clause was ambiguous, distinguished *Wallace* and *Varvil* on the basis that, in those cases, the "other insurance" clause specifically referred to other insurance issued by the same company. The policy language at issue here is very similar to that approved in *Varvil* and *Wallace*, with the exception that it refers to affiliated companies rather than the same company. Having already determined that the term "affiliated" is not ambiguous in this context, we have no difficulty holding that summary judgment was properly granted on this issue.

Before leaving this issue, we distinguish the cases of *Farm Bureau Mutual Insurance Co. v. Barnhill*, 284 Ark. 219, 681 S.W.2d 341 (1984), and *Ross v. United Services Automobile Association*, 320 Ark. 604, 899 S.W.2d 53 (1995), both of which allowed an insured to stack coverages. Both cases involved several vehicles insured under a single policy. In *Barnhill*, the supreme court held that Farm Bureau's "other insurance" clause, which was different than the one at issue here, did not contemplate that the other insurance involved could mean coverages available under the same policy. In *Ross*, the holding was limited to the particular language in the policy (which is not contained in the opinion) which, according to the court, "prohibit[ed] the stacking of *policies,* and not the stacking of *cars* within the policy." Here, appellants are attempting to stack coverages under different policies.

*An Ambiguity Exists When The Clause At Issue Is Read In Connection With A Standard "Other Insurance" Clause In The Policy*

In addition to the above-quoted "other insurance" clause, the garage policy contained the following clause:

> When this Coverage Form and any other Coverage Form or policy covers on the same basis, either excess or primary, we will pay only our share. Our share is the proportion that the Limit of Insurance of our Coverage Form bears to the total of the limits of all the Coverage Forms and policies covering on the same basis.

The Sweeden appellants argue that this clause, which attempts to prorate the insurer's liability, conflicts with the above-quoted "two or more" clause that sets an overall coverage limit. They rely on the case of *Carlino v. Lumbermens Mutual Casualty. Co.*, 74 N.Y.2d 350, 546 N.E.2d 909 (1989). In *Carlino*, it was held that a "two or more" clause like the one here impermissibly reduced the total applicable limits available to an insured. However, the holding was based on a New York insurance regulation that required insurers to ratably contribute when other insurance was involved. Appellants point to no such Arkansas regulation. Thus, we conclude that no inconsistency exists here. The standard "other insurance" clause obviously applies in situations when other applicable policies are issued by a company other than one affiliated with Farmers Insurance Exchange.

## Vicarious Liability

█ The Sweeden appellants argue that the garage policy provides coverage for Kenneth and Brenda White's vicarious liability separate and apart from the coverage provided to Randall White under the C10 policy for his negligence. In effect, they contend that the available policy limits should be increased because more than one insured may be held liable under separate theories of recovery. We disagree with appellants' argument. First, the garage policy provides $100,000 coverage for each "accident." There is no contention that more than one accident occurred in this case. Secondly, the Mid-Century policy provides coverage of $100,000 bodily injury for each person. The policy expressly states that its limit for "each person" is the maximum for bodily injury sustained by any one person in any one occurrence. It further provides that the company will pay no more than the maximum limits regardless of the number of insured persons involved in the occurrence. Thus, the $100,000 limit for "each person" referred to in the policy means $100,000 for each injured person, not for each insured person.

Appellants cite cases from other jurisdictions in support of their argument. *See, e.g., United Servs. Auto. Ass'n v. Crandall*, 95 Nev. 334, 594 P.2d 704 (1979); *Klatt v. Zera*, 11 Wis.2d 415, 105 N.W.2d 776 (1960). However, these cases hold only that an insurer may owe coverage to an insured parent who incurs vicarious liabil-

ity for his child's negligence in driving an automobile. None of the cited cases stands for the proposition that a policy's per-person limits may be increased when more than one insured is liable for damages.

### Uninsured/Underinsured Cases Not Applicable

The Sweeden appellants also argue that Arkansas cases that have approved anti-stacking language are inapplicable here because they involve uninsured and underinsured coverage rather than liability coverage. No cogent reason is offered for why this distinction is important. Appellants refer to the fact that our supreme court has said that, to analyze any stacking issue, the court should "Read the Statute and Read the Policy." *See Youngman v. State Farm, supra.* However, they claim that "[w]ithout uninsurance [sic] or underinsurance at issue, there is no statute to read." This is incorrect. The "statute" referred to in the supreme court's maxim is the statute that mandates that liability insurers offer minimum UM or UIM coverage. *See* Ark. Code Ann. §§ 23-89-209 and 23-89-403 (Repl. 1999). As with these types of coverages, Arkansas law also mandates minimum liability coverage. *See* Ark. Code Ann. § 27-19-605 (Repl. 1999). Thus, we see no relevant distinction for purposes of this case.

### Garage Policy Issued to Two Separate Entities

The "other insurance" clause at issue in this case aggregates policy limits when another policy has been "*issued to you* by us or any company affiliated with us...." (Emphasis added.) The Sweeden appellants argue that, because the garage policy was issued to two separate entities — Kenneth White and White's Auto Sales — the term "issued to you" is ambiguous. They cite *Aetna Casualty & Surety Co. v. Home Insurance Co.*, 44 Mass. App. 218, 689 N.E.2d 1355 (1998), in which it was held that an "other insurance" clause identical to the one here applied only when the policy was issued to a single owner, not when it was issued to two separate entities. The record as abstracted does not show that appellants made this argument below. We do not address arguments made for the first time on appeal. *Hendricks v. Burton*, 1 Ark. App. 159, 613 S.W.2d 609 (1981). Additionally, appellants make the argument for the first time in their reply brief, which is not permitted. *See Farmers &*

*Merchants Bank v. Deason,* 25 Ark. App. 152, 752 S.W.2d 777 (1988).

*Arkansas Decisions Upholding Anti-Stacking Clauses*
*Should Be Overruled*

 The White appellants argue that *MFA v. Wallace* and its progeny, which have upheld anti-stacking language in insurance policies, should be overruled. This court is not permitted to overrule cases handed down by our supreme court. *Eisner v. Fields,* 67 Ark. App. 238, 998 S.W.2d 421 (1999). Our attempt to certify the case to the supreme court was denied, no doubt because the court only recently rejected this same argument in *Youngman v. State Farm Automobile Insurance, supra.*

 In light of the forgoing, we hold that the anti-stacking language contained in the garage policy was not ambiguous and was applicable to this case. Therefore, appellees' coverage obligation was limited to the highest applicable limits, which would be the $100,000 per-person limits available under the Mid-Century policy.

 The only issue that remains is whether Ileen Sweeden's loss-of-consortium claim constitutes a separate "per-person" bodily injury, such that the Mid-Century policy's $300,000 per occurrence limit rather than its $100,000 per-person limit should apply. We hold it does not. The Mid-Century policy provides that any claim for loss of consortium shall be included in the per-person limit. A similar and even less specific (it did not mention loss of consortium) restriction was upheld in *Smith v. State Farm Mutual Automobile Insurance Co.,* 252 Ark. 57, 477 S.W.2d 186 (1972).

Affirmed.

GRIFFEN and ROAF, JJ., agree.