Glenn and Elizabeth HISAW *v.*
STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY

CA 01-1101                                    94 S.W.3d 349

Court of Appeals of Arkansas
Divisions III and IV
Opinion delivered December 23, 2002

240

*Parker Law Firm Ltd.*, by: *Tim S. Parker*, for appellants.

*Roy, Lambert & Lovelace*, by: *Jimmy Roy*, for appellee.

JOHN MAUZY PITTMAN, Judge. This is an underinsured motorist coverage case. Appellants Glenn and Elizabeth Hisaw filed suit in Carroll County Circuit Court seeking coverage under five separate State Farm policies, two issued to Glenn Hisaw personally and the other three issued to the Inspiration Point Volunteer Fire Department, of which Hisaw was chief. The trial court granted summary judgment to State Farm, ruling that the Hisaws were not entitled to coverage under any of the policies. We affirm the court's ruling on the fire department policies but reverse and remand as to Hisaw's personal policies.

On July 2, 1996, Glenn Hisaw received a radio dispatch regarding a one-car accident in Carroll County. He drove to the scene in his personal vehicle and began to render assistance as required. The accident involved a van driven by Clarence Struthers. Struthers had driven the van off the road, and it came to rest at a downhill angle among a stand of trees. It was later determined that Struthers had a blood-alcohol content of .213.

After Hisaw had assisted in removing Struthers from the scene, he returned to the van to obtain its registration information. One of the van's side doors (which opened toward the back of the van) had been left ajar. As Hisaw stood beside the van, the door closed, due to the effects of gravity, and struck him. Although Hisaw continued with his duties at the scene, he later sought medical attention for neck and back injuries.

In 1997, Hisaw and his wife sued Struthers and settled for Struthers's policy limits of $25,000. The Hisaws then sued State Farm for underinsured-motorist (UIM) benefits on the five abovementioned policies. With regard to the three fire department policies, State Farm contended that Hisaw was not an insured. With regard to all five policies, State Farm asserted that no coverage was owed because Hisaw's injuries were not "caused by accident arising out of the operation, maintenance or use of an underinsured motor vehicle." The trial judge agreed with State Farm and entered summary judgment in its favor on all policies. The Hisaws appeal from that ruling.

■ On appellate review of a summary judgment, we determine whether the trial court's grant of summary judgment was appropriate based on whether the evidence presented by the moving party left a material question of fact unanswered. *Sweeden v. Farmers Ins. Group*, 71 Ark. App. 381, 30 S.W.3d 783 (2000). The moving party always bears the burden of sustaining a motion for summary judgment. *Id.* All proof must be viewed in the light most favorable to the resisting party, and any doubts must be resolved against the moving party. *Id.* In a case where there are no disputed facts, our review focuses on the trial court's application of the law to the facts. *Id.*

■ The language in an insurance policy is to be construed in its plain, ordinary, and popular sense. *Norris v. State Farm Fire & Cas. Ins. Co.*, 341 Ark. 360, 16 S.W.3d 242 (2000). It is to be construed strictly against the insurer, who chooses its language. *See id.* The construction and legal effect of written contracts are matters to be determined by the court, not by the jury, except when the meaning of the language depends upon disputed extrinsic evidence. *Smith v. Prudential Prop. & Cas. Ins. Co.*, 340 Ark. 335, 10 S.W.3d 846 (2000). If the language employed in the policy is ambiguous or there is doubt and uncertainty as to its meaning and it is fairly susceptible to two interpretations, one favorable to the insured and the other favorable to the insurer, the former will be adopted. *Id.; Home Mut. Fire Ins. Co. v. Jones*, 63 Ark. App. 221, 977 S.W.2d 12 (1998).

We first explore Hisaw's status as an insured under the three fire department policies. The policies were issued on three separate vehicles and provided $100,000/$300,000 UIM⋅coverage. Although the record does not contain the declarations pages for these policies, the policy certifications state that the named insured was the "Inspiration Point Volunteer Fire Association" and that Glen Hisaw was not listed as a driver or named insured. The policy language defined an insured for UIM purposes as follows:

> **Insured** — means the **person** or **persons** covered by . . . underinsured motor vehicle This is:
>
> 1. The first **person** named in the declarations;
>
> 2. His or her **spouse**;
>
> 3. Their **relatives**; and
>
> 4. Any other **person** while **occupying**:
>
>> a. **Your car**, a **temporary substitute car**, a **newly acquired car** or a trailer attached to such a **car**. Such vehicle has to be used within the scope of the consent of **you** or **your spouse**; or
>>
>> b. A **car** not owned by **you, your spouse**, or any **relative**, or a trailer attached to such a **car**. It has to be driven by the first **person** named in the declarations or that **person's spouse** and within the scope of the owner's consent.
>>
>> Such other **person occupying** a vehicle used to carry **persons** for a charge is not an **insured**.
>
> 5. Any **person** entitled to recover damages because of **bodily injury** to an **insured** under 1 through 4 above.

The trial court ruled that Glenn Hisaw was not a named insured under the policies, nor did he fit into any of the categories listed above. Hisaw does not quarrel with that specific ruling, but he argues that he should be considered an insured by virtue of the fact that he was a member of the Inspiration Point Volunteer Fire Association. He cites *Baskins v. United Mine Workers*, 150 Ark. 398, 234 S.W. 464 (1921), for the proposition that an unincorporated association has no legal identity distinct from that of its

members. In light of that holding, he contends, if an unincorporated association is a named insured, its members are necessarily insureds.

■ We do not believe that the facts necessary to a resolution of this argument were sufficiently developed below. Although Hisaw argued during the summary judgment hearing that the firefighters and the association were one and the same, he did not specifically contend that the fire department was an unincorporated association. As a result, the record contains no information as to how the fire department was organized. Further, the trial court made no ruling regarding the organization of the fire department. Because these important gaps in the development of this issue exist, we decline to consider it as a basis for reversal. Our courts have said numerous times that we will not consider an issue that was not fully developed at the trial level. *See Knowlton v. Ward*, 318 Ark. 867, 889 S.W.2d 721 (1994); *Hastings v. Planters & Stockmen Bank*, 307 Ark. 34, 818 S.W.2d 239 (1991); *Lee v. Hot Springs Village Golf. Sch.*, 58 Ark. App. 293, 951 S.W.2d 315 (1997). Therefore, we will not reverse the trial court's grant of summary judgment to State Farm on the three fire department policies.

We turn now to Hisaw's two personal policies, each of which provided $50,000/$100,000 in UIM benefits. The UIM coverage parts read as follows:

> We will pay for damages for *bodily injury* an *insured* is legally entitled to collect from the owner or driver of an *underinsured motor vehicle*. The *bodily injury* must be sustained by an *insured* and caused by accident arising out of the operation, maintenance or use of an *underinsured motor vehicle*. (underlined emphasis added).[1]

At the time Hisaw sustained his injury, the "underinsured motor vehicle" (the Struthers van) was stationary, having been wrecked thirty minutes to two hours earlier. The van's operator was no longer at the scene. Hisaw was not attempting to operate or move

---

[1] The UIM coverage part on one of the policies was similar, but it did not include the words "sustained by an insured" on the third line. This difference in definitions is not important to the issues on appeal.

the van, but was merely standing beside it when one of the doors closed on him and injured him. The question is whether, given those facts, Hisaw's injury was "caused by an accident arising out of the operation, maintenance or use of" (hereafter referred to for convenience as simply the use of) the van.

■ The phrase "arising out of" has been given a broad meaning by the courts. *See* 6B John Appleman, *Insurance Law and Practice* § 4317 (1979). It is a general and comprehensive phrase that means originating from, growing out of, or flowing from. *Allied Mut. Ins. Co. v. Action Elec. Co.*, 256 Neb. 691, 593 N.W.2d 275 (1999). To "arise out of" the use of a vehicle, a victim's injuries need not rise to the level of being proximately caused by the use of the vehicle; it is enough that "but for" causation, *i.e.*, a cause and result relationship between the use of the vehicle and the injuries, exists. *See State Farm Mut. Auto. Ins. Co. v. LaSage*, 262 Ark. 631, 559 S.W.2d 702 (1978).

An example of the comprehensive application of such policy language may be seen in *Owens v. Ocean Accident and Guarantee Corp.*, 194 Ark. 817, 109 S.W.2d 928 (1937). There, the supreme court addressed a similar policy provision that required the victim's injuries to be "caused by the ownership, maintenance, or use of" the insured vehicle. The insurer had issued a liability policy to a funeral home that owned an ambulance. While on a call, an ambulance attendant went into a woman's home, placed her on a cot, and negligently permitted her to slide off before she was placed in the ambulance. The insurer contended that the woman's injuries were not caused by the use of the vehicle. The supreme court held that carrying the woman from her home to the ambulance was an essential transaction in connection with the use of the automobile as an ambulance and thus allowed coverage.

■ We agree with Hisaw that, under the broad interpretation required by our supreme court, there was a causal connection between Struthers's use of the van and Hisaw's injuries. But for Struthers's use and operation of the van in such a manner as to drive it off the road, Hisaw would not have responded to the accident, undertaken his official duties, and ultimately received his

injuries.[2] Further, the fact that his injuries were inflicted by the underinsured vehicle itself takes this case out of the realm of those decisions in which the vehicle was the mere situs of an injury that could just as easily have occurred elsewhere. *See, e.g., Carter v. Grain Dealers Mut. Ins. Co.*, 10 Ark. App. 16, 660 S.W.2d 952 (1983) (holding that victim's injuries did not arise out of the use of a motor vehicle when the victim received injuries from a gun fired in the vehicle).

In light of the foregoing, we reverse the trial court's entry of summary judgment to State Farm on Hisaw's personal insurance policies and hold that Hisaw's injuries arose out of the operation, maintenance, or use of the underinsured vehicle.[3]

---

[2] The passage of a few hours between the van being driven off the road and Hisaw's injury has no bearing on the causal relationship between Struther's negligence and Hisaw's injury:

> [A] tort-feasor is answerable for the consequences of wrongful conduct despite the occurrence of an intervening cause of harm so long as the intervening cause is foreseeable. Furthermore, if the intervening cause is merely incidental, having been set in motion or made effective by the first cause, and it is not a new and independent force sufficient of itself to cause the injury, the law passes it and traces the wrongful act which put it in operation.

86 C.J.S. *Torts* § 30 (1997). It was perfectly foreseeable that, after Struthers became intoxicated and drove his van off the road, down a slope, and into the trees, that someone would be required to investigate the accident scene and remove the vehicle. The angle at which Struthers's vehicle came to rest, and the force of gravity acting upon it, were indisputably set in motion and made effective by Struthers's negligence, and our focus is therefore upon Struthers's wrongful act, which put these forces into operation. Indeed, the Arkansas Supreme Court has held that, in the absence of an effective intervening cause, the lapse of even so much as a *month* between the negligent act and the resulting injury is not fatal as a matter of law to the recovery of damage. *See, e.g., Leek v. Brasfield*, 226 Ark. 316, 290 S.W.2d 632 (1956).

[3] Judge Baker's dissent is concerned with our holding on this point as a matter of law. However, in the absence of disputed extrinsic evidence (of which there is none in the present case), the construction and legal effect of a written contract is a matter to be determined by the court, not by the jury. *Smith v. Prudential Prop. & Cas. Ins.*, 340 Ark. 335, 10 S.W.3d 846 (2000), *overruling Farm Bureau Mut. Ins. Co. v. Whitten*, 51 Ark. App. 124, 911 S.W.2d 270 (1995). We perceive no *disputed* facts submitted by the parties to support their interpretation of the policy language. Therefore, the legal effect of the contract is a question of law. *See Smith v. Prudential Prop. & Cas. Ins. Co., supra.*

■ Appellants also contend that the trial court erred in granting summary judgment on Mrs. Hisaw's loss-of-consortium claim. State Farm argued below that Mrs. Hisaw could not recover for loss of consortium under any of the five policies because the policies only pay UIM benefits for "bodily injury," defined as follows: "bodily injury to a person and sickness, injury, or death which results from it." The trial court, having determined that no coverage was owed under the policies for other reasons, never made a ruling on this issue. Therefore, we need not address it on appeal. *Sturgis v. Skokos*, 335 Ark. 41, 977 S.W.2d 217 (1998). However, we do point out that two provisions contained in Hisaw's personal policies may be relevant to this issue on remand. The policies provide that the UIM "each person" amounts listed on the declarations page is the amount for all damages due to bodily injury to one person, which "includes all injury and damages *to others* resulting from this bodily injury." (Emphasis added.) Further, the UIM definition of an insured includes, in paragraph five, any person entitled to recover damages because of bodily injury to an insured.

For the reasons stated, we reverse and remand this case on issues pertaining to Hisaw's personal policies and affirm on the issues pertaining to the fire department policies.[4]

Affirmed in part; reversed and remanded in part.

STROUD, C.J., and ROBBINS, J., agree.

BIRD, CRABTREE, and BAKER, JJ., concur in part and dissent in part.

S AM BIRD, Judge, concurring in part; dissenting in part. I agree with the majority's decision to affirm the trial court's grant of summary judgment in favor of appellee on the fire department policies. However, I would also affirm the trial

---

[4] Appellants make a final argument that the trial court erred in mentioning that Mr. Hisaw was not a pedestrian at the time he was injured. We doubt that the court's remark had any effect on its ultimate ruling. In any event, considering our holding in this case, the remark has no bearing on the outcome of the case and need not be addressed as a basis for reversal.

court's grant of summary judgment on Hisaw's personal policies. Therefore, I dissent in part to the majority opinion.

The majority is able to conclude, using the "but for" concept of causation, that a causal connection exists between Struthers driving his van off the road and Glenn Hisaw being injured by the van's door after the van had been stationary for a period of time possibly as long as several hours.[1] I believe this stretches "but for" causation beyond its reasonable limits. At some point in a sequence of events, an incident ceases to be the legal cause of all that follows it. Otherwise, "but for" causation could be stretched to ridiculous proportions. I'm afraid we have reached that point in this case.

Rather than recognize that "but for" causation is not without limitation, the majority simply observes that the phrase "arising out of" has been given a broader meaning by the courts than proximate cause, and that, therefore, the victim's injuries need not rise to the level of being proximately caused by the use of the vehicle. The majority then cites *State Farm Mutual Automobile Insurance Company v. LaSage*, 262 Ark. 631, 559 S.W.2d 702 (1978), to support its conclusion that "but for" causation is enough to satisfy the "arising-out-of" requirement. However, *LaSage* simply has no application to the case at bar.

In *LaSage*, an uninsured motorist policy issued by State Farm to LaSage limited coverage to its insured for a hit-and-run motor

---

[1] Hisaw testified that he obtained the registration information after the state trooper arrived at the scene of the accident. He testified as follows about the timing of these events:

Q. [T]he police report indicates the accident was around 5:30 . . . .

A. It reports it at 5:30?

Q. Yeah. It says 5:30 p.m. is the time of the accident   Do you think the time is different?

A. Yes, I do.

Q. What time do you think it was?

A. I think it was earlier in the afternoon. . . . 2:00 or 3:00, something like that.

Q. Okay. Could you be mistaken about that?

A. Yeah, I could be, but I'm starting to kind of wonder if that isn't the time that the trooper didn't get there. . . . Because he was pretty late.

vehicle "which causes bodily injury to an insured arising out of physical contact of such vehicle with the insured or with a motor vehicle which the insured is occupying." While LaSage was driving his vehicle, it was struck by a hit-and-run vehicle. LaSage gave chase, but the chase ended when the hit-and-run vehicle stopped suddenly in the center of the road, forcing LaSage to drive his vehicle into a ditch where it struck a culvert, injuring LaSage. In the ensuing lawsuit under LaSage's uninsured motorist policy, State Farm argued that in construing the physical-contact requirement of the policy, the court should hold that such contact must be a proximate cause of the plaintiff's injuries and not a mere circumstance thereof. The supreme court disagreed, rejecting the notion that "arising out of" meant "proximately caused by," and quoted from *Manufacturers Casualty Insurance Co. v. Goodville Mutual Casualty Co.*, 403 Penn. 603, 170 A.2d 571 (1961), for the proposition that "'[b]ut for' causation, *i.e.*, a cause and result relationship, is enough to satisfy this provision of the policy."

*LaSage* is obviously distinguishable from the case at bar. The issue in *LaSage* was whether the plaintiff's injuries arose out of the physical contact with an uninsured motor vehicle that had preceded the plaintiff's injuries by a matter of minutes. In contrast, in the case at bar, the issue is whether Hisaw's injuries arose out of Struthers' use of his motor vehicle that had been completed hours earlier, long after Struthers had ceased to use his underinsured motor vehicle and had been removed from the accident scene in an ambulance.

In *LaSage*, the supreme court recognized that there may be circumstances where, under any definition of "arising out of," the injuries to a plaintiff might be too remote to be included in the coverage. I believe that the present case presents such a circumstance. Though it is theoretically possible to say that, but for the crash of the Struthers van, Hisaw would not have been injured, it is not reasonable, and it defies common sense. The fact that events are timed such that one follows another does not mean that the one caused the other. Struthers's use of the van had, at most, a remote and attenuated connection to Hisaw's injuries such as to negate causation. Therefore, I would hold that Hisaw's injuries did not arise out of the use of the Struthers vehicle and that Hisaw

and his wife were not entitled to coverage under their personal policies. I would affirm the trial court's grant of summary judgment in full.

I am authorized to state that Judge Crabtree joins me in this opinion.

K AREN R. BAKER, Judge, concurring in part; dissenting in part. I agree that the trial judge erred in granting summary judgment on Hisaw's personal policies and join in the majority's decision to reverse on this issue. However, I disagree with the majority's ultimate conclusion that Hisaw's injuries arose out of the operation, maintenance, or use of the underinsured vehicle. That is a question for the trier of fact, and it is inappropriate for this court to resolve that issue as a matter of law. *See Elam v. First Unum Life Ins. Co.*, 346 Ark. 291, 57 S.W.3d 165 (2001) (holding that where the parties go beyond the contract and submit disputed extrinsic evidence to support their interpretations of an insurance policy, a question of fact is presented).

The initial determination of the existence of an ambiguity in a contract rests with the court and if ambiguity exists, then parol evidence is admissible and the meaning of the term becomes a question of fact for the fact-finder. *C & A Const. v. Benning Const.*, 256 Ark. 621, 509 S.W.2d 302 (1974). Where different conclusions may be reached regarding what the undisputed facts demonstrate, summary judgment is inappropriate. *See Elam v. First Unum Life Ins. Co., supra.*

As for State Farm's liability under the fire department policies, I believe we should reach the merits of the issue and reverse the award of summary judgment. The majority is concerned that facts needed to resolve this issue were not sufficiently developed below. We must keep in mind that this was a summary judgment proceeding, and the purpose of the proceeding was not to try the issues but to determine if there were any issues to be tried. *See Thomas v. Stewart*, 347 Ark. 33, 60 S.W.3d 415 (2001). I believe Hisaw adequately argued his status as an insured under the fire department policies, such that we are capable of reaching the merits of his argument. Further, I think the merits of his argument require reversal. The policy defines the named insured as the

Inspiration Point Volunteer Fire Association. The association is obviously composed of its members. If a member of the association, in particular the chief of the fire department, does not qualify as an insured under the policy, then I must wonder who would qualify as an insured. Certainly a question of fact is presented as to who was intended as an insured, and, as a result, the issue is inappropriate for resolution by way of summary judgment. *See generally Walker v. Stephens*, 3 Ark. App. 205, 626 S.W.2d 200 (1981).

For the reasons stated, I respectfully dissent.