## Michael W. McMILLEN et al *v.* WINONA NATIONAL & SAVINGS BANK

82-270                                                          648 S.W.2d 460

### Supreme Court of Arkansas
### Opinion delivered March 28, 1983

*Hoover, Jacobs & Storey,* by: *O. H. Storey, III* and *Victor A. Fleming,* for appellants.

*Wright, Lindsey & Jennings,* for appellee.

DARRELL HICKMAN, Justice. This is a conflict of laws case and both parties on appeal agree that the facts more than the law dictate our decision. The circuit court, sitting without a jury, decided that the law of Minnesota applied to a sales contract and its accompanying financial documents, and, therefore, the appellee, Winona National and Savings Bank of Winona, Minnesota, was entitled to judgment against an Arkansas partnership consisting of Michael W. McMillen, John A. Teeter, and David Newbern. The parties agree that if Arkansas law had been applied, the usury provision in the Arkansas Constitution would have voided

the partnership's obligation to Winona. We cannot say the trial court was clearly wrong in its decision and affirm the judgment.

J. C. Brooks, a Little Rock businessman, wanted to open a tire retreading business and contacted Tom Underdahl, who sold such equipment in Minnesota. Underdahl agreed to meet Brooks at the airport in Little Rock when he arrived there on other business. Brooks, his lawyer, Robert McHenry, and perhaps a potential investor, met Underdahl and they discussed generally Brooks' plans. Afterwards Brooks began to try to find investors through his lawyer, McHenry. In the summer of 1977, Brooks and McHenry went to Minnesota. Upon returning to Arkansas, Brooks continued his search for investors and found Michael McMillen, Dr. David Newbern, and Dr. John Teeter, who decided to invest in the venture. They formed the ATC Partnership for that purpose. The Auto Tread Corporation was formed to operate the business; Brooks was general manager, but not a stockholder. Financing in Arkansas could not be obtained and Brooks notified the general manager of the supplier that financing had to be obtained somewhere besides Arkansas. Brooks told the seller that the seller would have to arrange financing.

In September of 1977, Brooks contacted Underdahl's company and asked them to send a sales representative to Arkansas, that investors had been found. Underdahl's sales representative traveled to Little Rock and negotiated some of the terms of financing; retreading equipment was ordered from the representative on that trip. Both the ATC Partnership and Brooks' lawyer, McHenry, signed the order. In October Brooks and McHenry made another trip to Winona, Minnesota. The seller contacted Winona National and Savings Bank about financing and supplied it with the names of the three partners. The bank approved them.

Brooks testified that McHenry called him to his office and told him he had some financing documents for Brooks to take around and get signed. Brooks got them signed by the three partners and gave them back to McHenry. They were signed by Underdahl when they were returned to Minnesota

and Underdahl's company assigned them to Winona National and Savings Bank. The equipment was shipped to Arkansas and installed by the seller's men but a fire in December of 1980 destroyed the plant.

This suit resulted from a dispute over the insurance proceeds. The partners sought to prevent Winona from collecting on the notes claiming the notes were usurious.

The trial court held that Minnesota law should apply and we agree. The principal significant contracts were in Minnesota. *Standard Leasing Corp.* v. *Schmidt Aviation, Inc.*, 264 Ark. 851, 576 S.W.2d 181 (1979). More important, Brooks, the central figure and moving force in this whole transaction, initiated the entire arrangement. He contacted the Minnesota seller, told them financing would have to be arranged through them, and it was entirely at his behest that the matter had any contact at all with Arkansas. This makes the situation different from one where an out-of-state seller initiates contacts in Arkansas. *See Tri-State Equipment Co.* v. *Tedder*, 272 Ark. 408, 614 S.W.2d 938 (1981); *Standard Leasing Corp.* v. *Schmidt Aviation, Inc., supra; Lyles* v. *Union Planters National Bank*, 239 Ark. 738, 393 S.W.2d 867 (1965). The documents, reciting that Minnesota law would govern, were mailed to Brooks' lawyer in Arkansas, signed in Arkansas by the buyers, and then signed in Minnesota by the seller.

What contact did the Winona bank have with Arkansas? None at all. Did a Minnesota company initiate a sale to an Arkansan? No. Did the parties intend for Arkansas law to apply? Certainly there is no evidence of it, except those facts recited and Brooks' testimony that that was his intent. Brooks, of course, was the key to the matter and he sought to buy equipment financed by an out-of-state bank.[1] The fact the contract was actually signed in Arkansas, and the investors never went to Minnesota cannot overcome the opposite facts: That Winona did not seek out the investors, and neither did it ever come to Arkansas; and that the contract expressly provided Minnesota law would govern.

---

[1] McHenry, Teeter and McMillen did not testify.

Ark. Stat. Ann. § 85-1-105 (Add. 1961); *Snow* v. *C.I.T. Corp. of the South, Inc.*, 278 Ark. 554, 647 S.W.2d 465 (1983).

Although the trial court's finding in such cases is not always critical, it has to be given some weight because a fact question did exist and the trial court found the facts to be in favor of Winona. We will not reverse that finding unless it is clearly contrary to the preponderance of the evidence. *Tri-State Equipment Co.* v. *Tedder, supra.* Here, the trial court correctly considered the factors we have found cotnrolling in determining the validity of multi-state contracts. *See Standard Leasing Corp.* v. *Schmidt Aviation, Inc., supra; Cooper* v. *Cherokee Village Development Co.*, 236 Ark. 37, 364 S.W.2d 158 (1963).

Affirmed.