2012 Ark. 247

**SCOTTSDALE INSURANCE COMPANY, Appellant**

v.

**MORROW LAND VALLEY COMPANY, LLC, and Ben Cain, Appellees.**

No. 11–905.

Supreme Court of Arkansas.

May 31, 2012.

Mark D. Wankum, Anderson, Murphy & Hopkins, L.L.P., Little Rock, for Appellant.

L. David Stubbs, Fayeteville, for Appellees.

KAREN R. BAKER, Justice.

Appellant, Scottsdale Insurance Company (Scottsdale), appeals a grant of partial summary judgment in favor of Morrow Valley Land Company, LLC (Morrow Valley), and Ben Cain (Morrow Valley and Cain referred to collectively herein as appellee). In granting summary judgment, the Washington County Circuit Court concluded that Scottsdale had a duty to defend appellee as its insured in an action for nuisance and trespass. On appeal, Scottsdale claims that the circuit court erred in granting summary judgment on the duty-to-defend claim because the pollution-exclusion provision in the insurance policy is unambiguous and excludes defense of pol-

lution claims. On cross-appeal, appellee asserts that the circuit court erred in denying in part its motion for attorney's fees. Our jurisdiction is pursuant to Arkansas Supreme Court Rule 1–2(b)(1), (2), and (5) (2011). We affirm on direct appeal and dismiss the cross-appeal.

On September 11, 2009, sixty-six plaintiffs filed the underlying lawsuit in Warren County, Tennessee, against Ben Cain, Morrow Valley Land Company, LLC, Hale Mountain Land Company, LLC, Tyson Foods, Inc., Tyson Farms, Inc., and Sunbest Farms, Inc.[1] The complaint alleged that the defendants owned and operated a concentrated animal-feeding operation (CAFO) in Morrison, Tennessee, which included ten poultry houses with between 400,000 and 600,000 chickens at any given time. The plaintiffs alleged that the defendants' conduct constituted a public and private nuisance, as well as a continuing trespass, under Tennessee law.

Appellee provided notice of the lawsuit to Scottsdale on September 21, 2009, and demanded that Scottsdale defend and indemnify it based on its insurance coverage with Scottsdale. In 2008, Scottsdale issued a commercial general-liability (CGL) insurance policy to Morrow Valley on its business described as "Broiler Chicken Houses." The policy's effective dates were from December 9, 2008, to December 9, 2009 (Policy No. CLS1562044). The initial policy included only the business located in Morrison, Tennessee. On June 1, 2009, Scottsdale added Morrow Valley's business located in Waldron, Arkansas, to the policy.

Scottsdale notified appellee by letter dated October 1, 2009, that it would not provide defense or indemnification coverage basing its denial in part on the pollu-

tion-exclusion provision contained in the insurance policy.

On December 22, 2009, appellee filed a petition for declaratory judgment in the Washington County Circuit Court, which it amended on January 5, 2010, adding Scottsdale's insurance agent, Regions Insurance, Inc. (Regions), and seeking damages for breach-of-contract claims against Scottsdale and Regions. Scottsdale filed an amended and substituted answer to appellee's second amended petition on July 9, 2010.

On June 8, 2010, appellee moved for summary judgment. Scottsdale filed a response to appellee's motion for summary judgment on August 13, 2010. The circuit court conducted a hearing on the motion on October 1, 2010. On April 6, 2011, the court granted partial summary judgment to appellee on the duty-to-defend claim. In granting partial summary judgment in favor of appellee, the circuit court, citing to *Crisler v. Unum Insurance Company of America*, 366 Ark. 130, 233 S.W.3d 658 (2006), found "that Arkansas has the 'most significant relationship' to the issues at hand; therefore, Arkansas law governs the insurance contract entered into by the parties." Relying on *Anderson Gas & Propane, Inc. v. Westport Insurance Corporation*, 84 Ark.App. 310, 318, 140 S.W.3d 504, 509 (2004), the court also found that the meaning of the phrase "pollution exclusion" was "'fairly susceptible to more than one reasonable interpretation and, thus, is ambiguous' under Arkansas law." The court stated that the duty to defend, therefore, arose because a possibility of coverage existed due to the ambiguity in the policy concerning whether the "pollution exclusion" covered the activities claimed in the underlying lawsuit. Thus, the court concluded that there was no genuine issue

---

1. All plaintiffs in the underlying lawsuit are referred to as the plaintiffs, and all defendants in the underlying lawsuit are referred to as the defendants.

of material fact as to whether Scottsdale had a duty to defend the underlying suit on behalf of appellee because the pollution exclusion was ambiguous under Arkansas law. The court denied appellee's motion for summary judgment on the claims that Scottsdale had a duty to indemnify appellee and acted in bad faith in denying appellee's request to defend and indemnify, finding that there were genuine issues of material fact on both claims.

On April 12, 2011, appellee filed a motion for supplementary relief, requesting attorney's fees and expenses related to its defense of the lawsuit. Appellee requested attorney's fees for three firms or attorneys: (1) $87,397.90 in fees and expenses incurred by the Leader, Bulso & Nolen Firm, of Nashville, Tennessee; (2) $4,077.89 in fees and expenses incurred by Steven Palley with Howrey, LLP, of Washington, D.C.; and (3) $72,033.24 in fees and expenses incurred by David Stubbs, General Counsel of Morrow Valley, of Lincoln, Arkansas. On April 15, 2011, Scottsdale filed a motion for Rule 54(b) certification and to stay the action pending appeal.

The circuit court held two hearings, and on June 16, 2011, the court issued two orders—one order addressing the two pending motions (Fee Order) and one amended and substituted order granting and denying summary judgment in part (Amended Order). The Fee Order agreed to grant appellee's legal fees and expenses as to the first two firms, but the court declined to award attorney's fees based on Stubbs's representation. In its June 16, 2011 Fee Order, the court stated that it would not award fees charged by Stubbs because Stubbs was in-house counsel for Morrow Valley, as well as other entities owned by Richard Latta; he was paid a salary for his role as in-house counsel; the evidence did not show that the fees Stubbs charged were related to the duty to defend and were unrelated to his capacity and role as in-house counsel; and the evidence did not show that the fees were reasonable and customary.

In the Fee Order, the court also granted Scottsdale's motion for Rule 54(b) certification and to stay the case pending appeal, upon Scottsdale's posting of a supersedeas bond in the amount of $91,475.79. The court stated that it would enter an amended and substituted order granting partial summary judgment and including the Rule 54(b) certificate.

In the Amended Order, the court added a Rule 54(b) certificate, finding "that an immediate, interlocutory appeal on the order finding a duty to defend in the above order is necessary in order to avoid hardship and injustice that will result if an appeal is not allowed."

Scottsdale filed a notice of appeal on June 21, 2011, from the Amended Order. Appellee filed a notice of cross-appeal on June 24, 2011, from the Amended Order and the Fee Order regarding its request for attorney's fees and expenses paid to Stubbs.

For reversal, Scottsdale argues that (1) Tennessee law, not Arkansas law, governs the interpretation and application of the Scottsdale CGL policy; and (2) under either Tennessee or Arkansas law, the pollution exclusion unambiguously applies and operates to preclude coverage and defense obligations for the persistent and widespread industrial pollution released from an industrial-poultry farm.

## I. *Choice of Law*

In its order granting partial summary judgment, the circuit court found that Arkansas has the most significant relationship to the issues in the case and, therefore, Arkansas law governed the insurance

contract between the parties. The court found that the parties contracted for the insurance in Arkansas, they negotiated the policy in Arkansas, that the place of performance was Arkansas, and that the domicile of both parties was Arkansas. The court₆acknowledged that the poultry farm involved in the Tennessee litigation was located in Tennessee, but nonetheless concluded that Arkansas law applied to the insurance policy.

■ We must first determine whether the insurance contract should be analyzed under our choice-of-law rules. *Crisler*, 366 Ark. at 132, 233 S.W.3d at 660. If we conclude that the contract does not contain an effective choice of law by the parties, we apply the significant-relationship analysis. *Id.* Because there are no disputed facts, our standard of review is de novo.

■ We first look at the contract at issue, Policy No. CLS1562044. Appellee asserts on appeal that the insurance policy contains an effective choice-of-law designation, directing us to the endorsement that states that Scottsdale "will submit to the jurisdiction of any court of competent jurisdiction within the United States of America" at the request of Morrow Valley. The endorsement further provides that "[a]ll matters which arise will be determined in accordance with the law and practice of the Court. In a suit instituted against any one of them under this contract, [Scottsdale] agrees to abide by the final decision of the Court or of any Appellate Court in the event of an appeal." Scottsdale correctly counters that appellee first raises this issue on appeal; therefore, this court is precluded from considering it. *See Jordan v. Diamond Equip. & Supply Co.*, 362 Ark. 142, 207 S.W.3d 525 (2005). Appellee never raised and developed the argument that the service-of-suit clause was also a choice-of-law designation before the circuit court, and the circuit court did

not have an opportunity to rule on the issue. We will not address an argument raised for the first time on appeal. *Id.; see also Brown v. Kelton*, 2011 Ark. 93, 380 S.W.3d 361.

■ |₇The insurance policy does not contain an effective choice-of-law provision; therefore, we apply the significant-relationship analysis. In *Crisler, supra*, we set forth the following list of five factors to determine which state has the most significant relationship to a particular case when the parties' contract does not contain an effective choice-of-law provision: "(1) the place of contracting; (2) the place of negotiation of the contract; (3) the place of performance; (4) the location of the subject matter of the contract; (5) the domicile, residence, nationality, place of incorporation and place of business of the parties." 366 Ark. at 133, 233 S.W.3d at 660 (citing Restatement (Second) Conflict of Laws § 188 (1971)). In this case, the circuit court made specific findings implementing the *Crisler* analysis, stating that the "place of contracting was Arkansas; the place of negotiating was Arkansas; the place of performance was Arkansas; the domicile of both parties is Arkansas; and, though, the poultry farm is physically located in Tennessee, the Court concludes that Arkansas rather than Tennessee law applies to the contract."

Scottsdale argues that Tennessee law should apply because the policy was purchased to insure a single property located entirely in Tennessee against losses occurring in Tennessee. This argument is not supported by the facts in this case. In the affidavit of James R. Latta filed in support of appellee's motion for summary judgment, Latta, as the managing member of Morrow Valley, stated that Morrow Valley purchased the insurance policy from its insurance agent, Eric Herget, a Regions

employee,[2] in Little Rock, Arkansas; that Morrow Valley is an |₈Arkansas company with offices in Lincoln, Arkansas; and that the policy was purchased and issued to provide liability protection for one of the farms that Morrow Valley owns and operates in Morrison, Tennessee. Morrow Valley later added the poultry farm located in Waldron, Arkansas, to the policy. The policy was issued to Morrow Valley, at its principal address in Lincoln, Arkansas, by INSURISK Excess & Surplus, with an address in Little Rock, Arkansas. From these facts, we conclude that the circuit court did not err in finding that Arkansas is the state with the most significant relationship. The circuit court acknowledged that the poultry farm was physically located in Tennessee, but did not find that fact sufficient to overcome the other factors in concluding that Arkansas has the most significant relationship to the transaction and parties in this case, and we agree.

## II. *Summary Judgment on Duty to Defend*

We then turn to whether, under Arkansas law, the circuit court erred in granting summary judgment. A party is entitled to summary judgment if "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law" on the issue set forth in the party's motion. Ark. R. Civ. P. 56(c)(2) (2011). The burden of proving that there is no genuine issue of material fact is upon the moving party. *Ryder v. State Farm Mut. Auto. Ins. Co.,* 371 Ark. 508, 268 S.W.3d 298 (2007). On appellate review, we must determine whether summary judgment was proper based on whether the evidence presented by the moving party left a material question of fact unanswered. *Id.* We view the proof in the light most favorable to the party resisting the |₉motion, resolving any doubts and inferences against the moving party, to determine whether the evidence left a material question of fact unanswered. *Id.*

Where the appeal is from the grant of summary judgment in cases involving an insurance policy, we liberally construe any ambiguities in the policy in favor of the insured. *State Auto Prop. & Cas. Ins. Co. v. Ark. Dep't of Envtl. Quality,* 370 Ark. 251, 258 S.W.3d 736 (2007). The court, and not the jury, determines the construction and legal effect of the policy, except when the meaning of the language depends upon disputed extrinsic evidence. *Id.*

Scottsdale argues that no duty to defend arose because the unambiguous language of the policy's pollution exclusion negated its duty to defend appellee from the claims in the underlying lawsuit. We must first apply the test for determining a liability carrier's duty to defend. *See Murphy Oil USA, Inc. v. Unigard Sec. Ins. Co.,* 347 Ark. 167, 61 S.W.3d 807 (2001). As a general rule, the pleadings against the insured determine the insurer's duty to defend. *Id.* The duty to defend is broader than the duty to indemnify; the duty to defend arises when there is a possibility that the injury or damage may fall within the policy coverage *Id.* Where there is no possibility that the damage alleged in the complaint may fall within the policy coverage, there is no duty to defend. *Id.*

To trigger a duty to defend under a CGL policy, the complaint must allege

---

**2.** Herget's employment relationship is shown through the affidavit of Kimberly K. Pergeson, the chief financial officer of all of Latta's companies, including Morrow Valley.

facts that would come within the coverage of the policy. *Id.* The pleadings in the underlying suit alleged that the defendants operated the CAFO "in such a manner that it generates noxious gases, smoke, dust, fumes, odors and particulate in great quantities which migrate off the property and are disseminated in great quantities through the surrounding environment." The plaintiffs claimed that these gases, smoke, dust, fumes, odors, and particulate caused them to suffer "grievous discomfort" by effecting nausea and sleep disturbance and by forcing the plaintiffs to stay inside their homes with windows closed to diminish the stench. The plaintiffs stated that the foregoing conduct interfered with and denied them the use and peaceful enjoyment of their properties and resulted in a decrease in the property value of their properties. The plaintiffs alleged that the foregoing conduct constituted a public and private nuisance and a continuing trespass under Tennessee law.

Scottsdale provided a CGL-insurance policy during the relevant period alleged in the complaint. The policy stated that Scottsdale was obligated to defend appellee against any suit seeking damages because of bodily injury or property damage to which the coverage applied. However, Scottsdale relied on the policy's pollution exclusion, which follows, to deny coverage:

This insurance does not apply to:

f. Pollution

(1) "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants."

The policy defined the term "pollutants" as "any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed."

To determine whether a duty to defend arises in this suit, we must examine the language in the contract from which the purported duty arises. A critical part of this examination turns on whether the language in the insurance contract is ambiguous. Where the terms of the insurance policy are clear and unambiguous, the policy language controls. *Essex Ins. Co. v. Holder*, 370 Ark. 465, 261 S.W.3d 456 (2007). Absent statutory strictures to the contrary, exclusionary clauses are generally enforced according to their terms. *Id.* (citing *Smith v. Shelter Mut. Ins. Co.*, 327 Ark. 208, 937 S.W.2d 180 (1997)). We need not resort to rules of construction in order to ascertain the meaning of an insurance policy when no ambiguity exists. *Id.* We will not rewrite the terms of an insurance contract under the rule of strict construction against the insurer so as to bind the insurer to a risk that the contract plainly excluded and for which it was not paid. *Id.*

Language is ambiguous when there is doubt or uncertainty as to its meaning and it is fairly susceptible to more than one reasonable interpretation. *Elam v. First Unum Life Ins. Co.*, 346 Ark. 291, 57 S.W.3d 165 (2001). Ordinarily, the question of whether the language of an insurance policy is ambiguous is one of law to be resolved by the court; however, where parol evidence has been admitted to explain the meaning of the language, the determination becomes one of fact for the jury to determine. *Id.*

The critical language for this court to examine is the pollution-exclusion provision in the insurance contract. Scottsdale argues that the language is plain and unambiguous; therefore, the claims in the underlying lawsuit are excluded by the express terms of the pollution exclusion. In the alternative, Scottsdale argues that if

the court determines that the language is ambiguous, Morrow Valley is an "industrial polluter." Scottsdale argues that *Minerva Enterprises, Inc. v. Bituminous Casualty Corporation*, 312 Ark. 128, 851 S.W.2d 403 [12](1993), instructs us that the goal of the pollution exclusion is to prevent widespread and persistent industrial polluters from obtaining insurance coverage for their industrial polluting activities.

We first look to whether the pollution exclusion is ambiguous. Appellee argues that we have held that pollution exclusions are ambiguous as a matter of law. On the other hand, Scottsdale contends whether pollution exclusions are ambiguous always depends on the context, citing *Madison Constr. Co. v. Harleysville Mut. Ins. Co.*, 557 Pa. 595, 735 A.2d 100, 106 (1999). Arkansas law is clear on this issue without the need to resort to law from other jurisdictions. We have stated:

> Although the meaning of an ambiguity may become a question for the factfinder if parol evidence has been admitted to resolve that ambiguity, *see Minerva Enter., Inc. v. Bituminous Cas. Corp.*, 312 Ark. 128, 851 S.W.2d 403 (1993), where the meaning of the language of a written contract does not depend on disputed extrinsic evidence, the construction and legal effect of the contract are questions of law. *See Duvall v. Massachusetts Indem. & Life Ins. Co.*, 295 Ark. 412, 748 S.W.2d 650 (1988); *Security Ins. Co. v. Owen*, 252 Ark. 720, 480 S.W.2d 558 (1972).

*Smith v. Prudential Prop. & Cas. Ins. Co.*, 340 Ark. 335, 341, 10 S.W.3d 846, 850 (2000). We have expressly rejected the contention that "when the terms of a written contract are ambiguous, its meaning is always a question of fact." *Id.* at 341, 10 S.W.3d at 851.

Arkansas appellate courts have interpreted pollution exclusions similar to the present exclusion in three cases, *Minerva, supra; State Auto, supra;* and *Anderson, supra.* In each case, the court concluded that the pollution exclusion at issue before it was ambiguous.

In *Minerva*, the insured owned a mobile-home park, and the park's septic system backed up into a tenant's home, flooding the home with solid and liquid sewage. *Minerva*, [13]312 Ark. at 129, 851 S.W.2d at 403. The insurer refused to defend or indemnify based on a pollution exclusion in the policy. The insured filed an action for declaratory judgment against the insurer for its failure to defend. The trial court granted summary judgment in favor of the insurer on the basis that the policy contained an exclusion for "waste" and that raw sewage is "waste." *Id.* On appeal, the issue centered on the interpretation of the term "pollutants" contained in the policy's pollution exclusion. The court concluded that the pollution exclusion was ambiguous because it was not clear from the policy's language whether a single incident involving the back-up of a septic tank in a mobile-home park was necessarily the kind of damage the pollution-exclusion clause was intended to exclude. *Id.* at 134, 851 S.W.2d at 406. The court further applied the rule of *ejusdem generis* to consider the term "waste" within the context of the entire list of examples of pollutants, and all of the pollutants contained in the list were related to industrial waste. In *Minerva*, the court noted that the initial determination of ambiguity must rest with the court, but if the court determines that "ambiguity exists, then parol evidence is admissible and the meaning of the ambiguous terms becomes a question for the fact finder." *Id.*

The court of appeals, in *Anderson, supra*, examined a pollution exclusion claimed to exclude an insurer's duty to defend. As in *Minerva*, the court of ap-

peals concluded that the language of the pollution exclusion was ambiguous because the term "gasoline" was not included in a policy's definition of "pollutants" and the terms "irritant" or "contaminant" could reasonably be construed as either including or excluding the term "gasoline." *Anderson*, 84 Ark.App. at 318, 140 S.W.3d at 508–09. The court reversed the grant of [14]judgment in favor of the insurer on the duty to defend because the language of the exclusion was fairly susceptible of more than one meaning and there was a possibility that the injury or damage may fall within the policy coverage. *Id.*

In *State Auto, supra*, we were again presented with a dispute over the interpretation of a pollution-exclusion clause; however, the appeal involved the duty to indemnify, which is not as broad as the duty to defend. There, the insurer argued that the circuit court erred in granting summary judgment in favor of the insured because the court relied on *Minerva* and *Anderson*, which were wrongly decided, and because the circuit court failed to consider the parol evidence that the insurer offered to remove any alleged ambiguity. *State Auto*, 370 Ark. at 260, 258 S.W.3d at 743. We rejected the argument that we should overrule the cases as wrongly decided, but reversed and remanded on the second point. We concluded that the pollution exclusion was ambiguous because it used the same language that the *Minerva* court deemed ambiguous. *Id.* We then continued to the next step in the application of *Minerva:* an examination of any extrinsic or parol evidence submitted by the parties to resolve the ambiguity. *Id.* We noted that in *Minerva* we applied *ejusdem generis*, but observed that there the insurer did not apparently offer any extrinsic evidence to resolve the ambiguity; whereas, in *State Auto*, the insurer did offer extrinsic evidence in favor of its interpretation. *Id.* We reversed the order

awarding summary judgment because the circuit court had not considered the extrinsic evidence. *Id.*

In the present case, we have a pollution exclusion that is substantially similar to the exclusions we reviewed in *Minerva* and *State Auto*. Scottsdale contends that Morrow Valley [15]is a persistent, industrial polluter, which takes this within the contemplation of this court's distinction regarding the ambiguity in *Minerva*. While the *Minerva* court deemed the industrial-polluter argument a "plausible" one, such an argument does not resolve the holding that the language is ambiguous. By our own definition, language is ambiguous if it is susceptible to more than one reasonable interpretation. *Elam*, 346 Ark. at 297, 57 S.W.3d at 169. Our cases have made it clear that we have often deemed the definition of the term "pollutants" in pollution-exclusion clauses ambiguous. Here, the plaintiffs in the underlying lawsuit claimed that the defendants have caused noxious gases, smoke, dust, fumes, odors, and particulate to migrate off their property and then disseminated them into the surrounding environment. As in *Minerva*, it is unclear whether the claimed gases, smoke, dust, fumes, odors, and particulate from the CAFO would constitute "solid, liquid, gaseous or thermal irritant or contaminant" falling within the definition of "pollutants" contained in the insurance policy's pollution exclusion. We conclude that whether the dissemination of such gases, smoke, dust, fumes, odors, and particulate comes within the definition of "pollutants" is fairly susceptible to more than one reasonable interpretation; therefore, the pollution exclusion is ambiguous.

Then, we turn to the second part of the analysis under *Minerva*. We must determine whether the parties have submitted any extrinsic evidence in sup-

port of their interpretation of the clause. It is the province of the court to determine the construction and legal effect of contract, "except when the meaning of the language depends upon disputed extrinsic evidence." *Smith*, 340 Ark. at 340, 10 S.W.3d at 850 (quoting *Southall v. Farm Bureau Mut. Ins. Co.*, 276 Ark. 58, 60, 632 S.W.2d 420, 421 (1982)). Summary judgment is not proper when the parties submit disputed extrinsic evidence to support their proffered meaning of the disputed term. *State Auto*, 370 Ark. at 260, 258 S.W.3d at 743. When, however, parol evidence has not been admitted to resolve the ambiguity, the meaning of an ambiguity is a question of law, and it is error for a court to submit the issue to a jury. *See Smith*, 340 Ark. at 341, 10 S.W.3d at 850.

Here, an examination of the record on appeal does not reveal that the parties submitted extrinsic evidence in support of their interpretation of the word "pollutant" in the clause before us. Accordingly, we conclude that the trial court did not err in finding that the pollution exclusion was ambiguous and that appellee was entitled to summary judgment on the duty to defend because there is a possibility that the injury or damage may fall within the policy coverage, and we affirm.

### III.  *Cross–Appeal on Denial of Attorney's Fees*

In the Fee Order, the circuit court denied appellee's motion for attorney's fees for services rendered by Stubbs, its in-house counsel. Appellee had requested reimbursement for Stubbs's representation in the amount of $72,033.24 in time and expenses.

However, this issue is not properly before us because there is not a final, appealable order with respect to the cross-appeal. The circuit court entered two orders on the same date, June 16, 2011: the Fee Order ruled on appellee's motion for sup-plemental relief, which included its request for attorney's fees, and Scottsdale's motion to stay pending Rule 54(b) certification and appeal; however, the Amended Order was the only order that included a Rule 54(b) certificate, and it solely certified the issue involving the duty to defend. It is clear that Scottsdale appeals from the Amended Order, and appellee appeals from the Fee Order. Appellee claims in its notice of cross-appeal that it appeals from the Amended Order and the "order on plaintiffs' request for supplementary relief entered in this matter of June 16, 2011." Appellee states in its notice that it particularly appeals the portion of that order that denied it complete reimbursement for its attorney's fees and costs paid to Stubbs; however, that issue was resolved in the Fee Order. Although Rule 54(b) provides that the trial court may direct final judgment with regard to fewer than all of the claims or parties by an express determination, supported by specific factual findings, that there is no just reason for delay, the circuit court did not make such a determination here with respect to its denial in part of appellee's motion for supplemental relief. *See, e.g., Richardson v. Rodgers*, 329 Ark. 402, 947 S.W.2d 778 (1997) ("An order is not appealable when it fails to mention an intervenor's claim and contains no recitation of facts which would allow a piecemeal appeal under Ark. R. Civ. P. 54(b)."). The Rule 54(b) certificate does not certify the issue regarding Stubbs's fees, and we cannot reach its merits on appeal.

We dismiss the cross-appeal without prejudice because the Fee Order is not a final, appealable order within the requirements of Rule 2 of the Arkansas Rules of Appellate Procedure–Civil.

Affirmed on direct appeal; dismissed without prejudice on the cross-appeal.

CORBIN, DANIELSON, and GOODSON, JJ., concur.

COURTNEY HUDSON GOODSON, Justice, concurring.

I am in full agreement with the majority opinion to affirm on direct appeal and to dismiss the cross-appeal. However, I write separately on the choice-of-law issue to clarify the standard of review that is applicable in this case.

In conflict-of-law disputes for causes of action arising in contract, this court applies the law of the state with the most significant relationship to the issue at hand. *Ducharme v. Ducharme*, 316 Ark. 482, 872 S.W.2d 392 (1994). In cases not involving an effective choice of law by the parties, the following factors are relevant in determining which state has the most significant relationship to a particular case: (1) the place of contracting; (2) the place of negotiation of the contract; (3) the place of performance; (4) the location of the subject matter of the contract; (5) the domicile, residence, nationality, place of incorporation, and place of business of the parties. *Crisler v. Unum Ins. Co. of America*, 366 Ark. 130, 233 S.W.3d 658 (2006).

Thus, in any given case, a circuit court is called upon to apply these factors to the specific facts of the case in order to determine which state has the most significant relationship to the contract. Recognizing that this is a fact-based inquiry, this court in the past has applied the clearly-against-the-preponderance-of-the-evidence standard of review to a circuit court's findings on a choice-of-law question. *McMillen v. Winona Nat'l & Sav. Bank*, 279 Ark. 16, 648 S.W.2d 460 (1983); *Tri–State Equip. Co. v. Tedder*, 272 Ark. 408, 614 S.W.2d 938 (1981); *Yarbrough v. Prentice Lee Tractor Co.*, 252 Ark. 349, 479 S.W.2d 549 (1972). This standard comports with Rule 52(b) of the Arkansas Rules of Civil Procedure, which provides that "in all contested actions tried upon the facts without a jury, ... [f]indings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous (clearly against the preponderance of the evidence)[.]" By analogy, we also employ the same standard of review when considering a circuit court's findings regarding the sufficiency of a defendant's contacts with the forum state in deciding whether there is personal jurisdiction. *Yanmar Co., Ltd. v. Slater*, 2012 Ark. 36, 386 S.W.3d 439; *John Norrell Arms, Inc. v. Higgins*, 332 Ark. 24, 962 S.W.2d 801 (1998); *see also Wis. Brick & Block Corp. v. Cole*, 274 Ark. 121, 622 S.W.2d 192 (1981) (the issue of whether sufficient minimum contacts exist is a question of fact); *Ratliff v. Thompson*, 267 Ark. 349, 590 S.W.2d 291 (1979) (same).

While the issue of which state has the most significant relationship is ordinarily a question of fact, this case comes to us from an order of partial summary judgment, where the parties agree that there are no facts in dispute. Accordingly, our review must focus on the circuit court's application of the law to the facts. *Harasyn v. St. Paul Guardian Ins. Co.*, 349 Ark. 9, 75 S.W.3d 696 (2002); *Chamberlin v. State Farm Mut. Auto. Ins. Co.*, 343 Ark. 392, 36 S.W.3d 281 (2001); *Youngman v. State Farm Mut. Auto. Ins. Co.*, 334 Ark. 73, 971 S.W.2d 248 (1998). In this regard, a circuit court's conclusions of law are given no deference on appeal. *Morningstar v. Bush*, 2011 Ark. 350, 383 S.W.3d 840. In my view, the circuit court correctly applied the law to the undisputed facts of this case to conclude that Arkansas has the most significant contacts in this case. Therefore, I agree that the circuit court did not err in granting summary judgment on this issue.

CORBIN and DANIELSON, JJ., join.