Cite as 2025 Ark. App. 11

# ARKANSAS COURT OF APPEALS
## DIVISION I
### No. CV-22-11

| | |
|---|---|
| AMERICAN INSURANCE COMPANY<br>APPELLANT/CROSS-APPELLEE<br><br>V.<br><br><br>RED APPLE ENTERPRISES LIMITED<br>PARTNERSHIP; UNITED RESORTS,<br>INC.; AND RICHARD H. UPTON<br>APPELLEES/CROSS-APPELLANTS | Opinion Delivered  January 15, 2025<br><br>APPEAL FROM THE CLEBURNE<br>COUNTY CIRCUIT COURT<br>[NO. 12CV-16-169]<br><br>HONORABLE HOLLY MEYER, JUDGE<br><br><br>REVERSED ON DIRECT APPEAL;<br>CROSS-APPEAL MOOT |

**ROBERT J. GLADWIN, Judge**

American Insurance Company ("AIC") appeals from a summary judgment entered in

favor of Red Apple Enterprises Limited Partnership; United Resorts, Inc.; and Richard H.

Upton (collectively "Red Apple").[1] In the summary-judgment order, the circuit court found

as a matter of law that AIC had a duty to defend Red Apple as its insured in a lawsuit filed

by Windsong Enterprises, Inc. ("Windsong"). AIC argues that the circuit court erred (1) in

finding that it owed a duty of defense to Red Apple and (2) in awarding damages, statutory

penalties, and judgment interest to Red Apple. On cross-appeal, Red Apple argues that the

---

[1]The parties do not dispute that, at the relevant times, Richard H. Upton was the president of United Resorts, Inc., which was a corporate general partner of Red Apple Enterprises Limited Partnership.

circuit court erred in determining the applicable rate of interest for its award of judgment interest. We hold that the circuit court erred in awarding summary judgment to Red Apple, and we reverse. Our reversal makes the cross-appeal moot.

I. *Facts and Procedural History*

It is undisputed that Red Apple and Windsong were competitor land developers involved in a long-running dispute and previous litigation relating to property located in Eden Isle Subdivision in Cleburne County. *See Windsong Enters., Inc. v. Upton*, 366 Ark. 23, 233 S.W.3d 145 (2006) (*Windsong I*) (recounting history of litigation between the developers); *see also Windsong Enters., Inc. v. Red Apple Enters. Ltd. P'ship*, 2018 Ark. App. 39, 542 S.W.3d 177 (*Windsong II*) (same). Most recently, in April 2010, Windsong filed an action against Red Apple alleging that Red Apple had intentionally misrepresented the amount of acreage it owned in Eden Isle Subdivision for the purpose of controlling development within the subdivision.[2] In the lawsuit, Windsong claimed that Red Apple's actions in these respects caused it to suffer damages relating to property it had purchased and planned to develop within the subdivision. The action asserted several theories of recovery, including (1) fraud; (2) intentional interference with business expectancy; (3) breach of contract; (4) declaratory judgment as to the validity of some of the amendments to the subdivision's bill of assurance; (5) negligence; and (6) nuisance.

---

[2]The underlying lawsuit was filed in *Windsong Enterprises, Inc. v. Red Apple Enterprises Limited Partnership; Propco Limited Partnership No. 1; Propco, Inc.; United Resorts, Inc.; Richard H. Upton; and UDC, LLC*, Cleburne County Circuit Court, No. 12CV-10-87-2.

When the lawsuit was filed in 2010, Red Apple was insured under consecutive portfolio policies of insurance issued by AIC ("the policy"). The effective dates of the policy were from September 1, 2006, to September 1, 2010. In relevant part, the policy included coverage for commercial general liability under which it insured Red Apple against claims for "property damage" through coverage labeled "Coverage A" and against claims for "personal and advertising injury" through coverage labeled "Coverage B."[3] Red Apple reported Windsong's claims to AIC and demanded that AIC defend and indemnify it on the basis of its insurance coverage with AIC. AIC agreed to provide Red Apple with a defense to Windsong's claims but reserved the right to terminate its defense if it determined that, under the policy, no coverage applied to Windsong's claims.[4]

In the Windsong lawsuit, on December 13, 2010, the circuit court granted partial summary judgment to Red Apple and dismissed three of the tort claims asserted in Windsong's original, amended, and second amended complaints. On November 22, 2011, Windsong filed a third amended complaint. By letter dated February 3, 2012, AIC notified Red Apple that it was exercising its right to terminate its defense because it had determined that Windsong's claims were not potentially covered under the policy.

_____

[3]The policy also included coverages for property, inland marine, and auto insurance. The policy coverage under these separate coverage forms is not at issue in this case.

[4]In November 2009, before Windsong filed the lawsuit, Red Apple first notified AIC that it had received a demand letter from Windsong. AIC, at that time, stated that it would not provide a defense in the potential litigation. After the lawsuit was filed in April 2010, AIC elected to provide a defense under a reservation of rights.

After AIC withdrew its defense, the Windsong litigation continued for several years. Windsong filed a fourth amended complaint on July 6, 2012, and a fifth amended complaint on August 26, 2013. On September 12, 2013, the circuit court granted summary judgment to Red Apple on Windsong's last remaining tort claim. On October 11, 2016, the court entered a final order resolving all remaining issues in favor of Red Apple. Windsong appealed, and we affirmed the judgment in an opinion issued on January 24, 2018. *See Windsong II*, 2018 Ark. App. 39, 542 S.W.3d 177.

On October 18, 2016, Red Apple filed the instant action in the Cleburne County Circuit Court seeking contractual damages for the defense costs incurred in the Windsong litigation after the time that AIC withdrew its defense in February 2012. On November 22, 2016, AIC filed an answer and a counterclaim for declaratory judgment that it did not owe a duty to defend Red Apple against any of the claims made in the Windsong lawsuit.

The parties subsequently filed competing motions for summary judgment on the duty-to-defend claim. AIC contended that coverage was barred for any damages Windsong might have recovered in the action because (1) the claims were a continuation of prior litigation and arose before the earliest effective date of the policy period; (2) the "occurrences" alleged were not accidents; (3) the lawsuit did not allege "property damage" but instead only intangible economic losses; and (4) the claimed damages were caused by Red Apple's intentional conduct. Red Apple argued that Windsong's claims were based on amendments to the subdivision's bill of assurance that were filed of record after the prior litigation had been resolved and that it had no knowledge of the claims until it received

4

Windsong's demand letter in November 2009. Red Apple further argued that in a nuisance claim, Windsong alleged loss of use and enjoyment of property within the policy's definition "property damage." Red Apple also argued that Windsong claimed damages for "personal and advertising injury" arising from both malicious prosecution and defamation, resulting in damage to its business and personal reputation.

After a hearing on December 10, 2019, the circuit court granted Red Apple's motion for partial summary judgment, denied AIC's cross-motion for summary judgment, and dismissed AIC's counterclaim. In its May 18, 2020 order, the court found as matter of law that AIC owed a duty of defense to Red Apple in Windsong's lawsuit. The court concluded that the following claims were potentially covered under the policy AIC issued to Red Apple: (1) "the three (3) tort claims of Fraud (which included constructive fraud), Negligence and Intentional Interference with Business Expectancy asserted by Windsong in the Windsong litigation up to the entry of the Circuit Court's December 13, 2010 Summary Judgment Order"; (2) "malicious prosecution as set out in paragraphs 12 and 28 of Windsong's Second and Third Amended Complaints"; (3) "the alleged damage to Windsong's business and personal reputation as alleged in paragraph 71 of Windsong's Second and Third Amended Complaints"; and (4) "any specific common law allegations in the Nuisance claim set out in paragraphs 71–75 of Windsong's Third Amended Complaint." The court reserved the issues of damages, penalties, interest, and attorney's fees for a later determination.

On June 12, 2020, Red Apple moved for partial summary judgment seeking an award of $372,993.52 in compensatory damages and penalties, interest, and attorney's fees

pursuant to Arkansas Code Annotated sections 23-79-208 (Repl. 2014) and 23-79-209. In response, AIC denied "that all of the $372,993.52 sought by [Red Apple] as its damages should be awarded because disputed issues of fact remain as to whether that amount of attorney's fees was expended in defense of the underlying litigation." AIC further argued that Red Apple was not entitled to penalties under Arkansas Code Annotated section 23-79-208(a)(1) or to an award of prejudgment interest.

After a hearing on January 7, 2021, the circuit court granted in part Red Apple's summary-judgment motion on damages, penalties, and interest. On August 5, 2021, the court entered a final judgment awarding Red Apple (1) compensatory damages in the amount of $372,993.52 (representing the costs incurred in defending the Windsong litigation after AIC withdrew the defense); (2) a 12 percent penalty in the amount of $44,759.22; (3) prejudgment interest in the amount of $124,765.49; and (4) postjudgment interest accruing at the rate of 2.25 percent per annum.[5]

AIC now appeals and for reversal argues that the circuit court erred (1) in finding that it owed a duty of defense to Red Apple and (2) in awarding damages, statutory penalties, and judgment interest to Red Apple. On cross-appeal, Red Apple argues that the circuit court erred in determining the applicable rate of interest for its award of judgment interest.

II. *Standard of Review*

---

[5]On November 29, 2021, the circuit court entered a judgment awarding Red Apple attorney's fees. The parties do not challenge the award of attorney's fees.

Summary judgment may be granted by a circuit court only when there are no genuine issues of material fact to litigate and when the case can be decided as a matter of law. *Smith v. St. Paul Fire & Marine Ins. Co.*, 76 Ark. App. 264, 268, 64 S.W.3d 764, 767–68 (2001). The purpose of summary judgment is not to try the issues but to determine whether there are any issues to be tried. *Akers v. Butler*, 2015 Ark. App. 650, at 4, 476 S.W.3d 183, 185. Normally, we determine if summary judgment is proper by deciding whether evidentiary items presented by the moving party leave a material question of fact unanswered, viewing all evidence in favor of the nonmoving party. *Selrahc Ltd. P'ship v. SEECO, Inc.*, 2009 Ark. App. 865, at 3, 374 S.W.3d 33, 35–36. However, in cases such as this where the parties do not dispute the essential facts, we simply determine whether the moving party was entitled to judgment as a matter of law. *Id.* When parties file cross-motions for summary judgment, "they essentially agree that there are no material facts remaining, and summary judgment is an appropriate means of resolving the case." *Douglas Cos., Inc. v. Walther*, 2020 Ark. 365, at 5, 609 S.W.3d 397, 400. As to issues of law presented, our review is de novo. *Id.*

### III. *Discussion*

We must first determine whether the circuit court erred in ruling as a matter of law that AIC owed a duty of defense to Red Apple in the Windsong lawsuit. In deciding whether an insurer has a duty to defend, we look to the allegations made against the insured in the underlying lawsuit. *Murphy Oil USA, Inc. v. Unigard Sec. Ins. Co.*, 347 Ark. 167, 175–76, 61 S.W.3d 807, 812 (2001). The duty to defend is broader than the duty to indemnify; it arises when the "mere possibility of coverage" exists. *Id.* at 176–78, 61 S.W.3d at 812–14. *See also*

7

*Hudson v. Farm Bureau Mut. Ins. Co. of Ark., Inc.*, 2022 Ark. App. 393, at 7, 654 S.W.3d 682, 687 (noting well-established rule that the allegations in a complaint, whether groundless or false, determine the duty of the insurer to defend the litigation against its insured). When there is no possibility that the damage alleged in the complaint may fall within the policy coverage, there is no duty to defend. *Hudson*, 2022 Ark. App. 393, at 8, 654 S.W.3d at 687.

Our law regarding construction of insurance contracts is well settled. *Id.* at 5, 654 S.W.3d at 686. We construe the language in an insurance policy in its plain, ordinary, and popular sense. *Id.* If the language of the policy is unambiguous, we will give effect to the plain language of the policy without resorting to the rules of construction. *Id.* at 5–6, 654 S.W.3d at 686. Once it is determined that coverage exists, it then must be determined whether the exclusionary language within the policy eliminates coverage. *Id.*

In an appeal from the grant of summary judgment in a case involving an insurance policy, as in this case, we resolve any doubt in favor of the insured in determining whether a complaint states a claim within the policy coverage. *Scottsdale Ins. Co. v. Morrow Land Valley Co., LLC*, 2012 Ark. 247, at 9, 411 S.W.3d 184, 190. We are not, however, "required by the rules of contractual construction to stretch our imaginations to create coverage where none exists." *Pate v. United States Fid. & Guar. Co.*, 14 Ark. App. 133, 136, 685 S.W.2d 530, 532 (1985).

AIC argues that the circuit court erred in finding as a matter of law that it had a duty to defend Red Apple. AIC offers several reasons why there was no possibility that Windsong's claimed damages fell within the policy coverage. Among other reasons, AIC

argues that Windsong's claims did not allege "property damage" caused by an "occurrence." AIC also contends that the policy's intentional-acts exclusions barred coverage for Windsong's claims. We agree.

We first examine the allegations made against Red Apple in Windsong's lawsuit. In its complaint and amended complaints, Windsong alleged that Red Apple fraudulently "inflat[ed] acreage notations in the Cleburne County tax records" and "used a deception as to the number of acres actually available for [Red Apple] to grant approval for any amendment to the Amended and Restated Plat and Bill of Assurance of Eden Isle Subdivision." Windsong claimed that Red Apple "used the fraudulent representations of acreage on repeated occasions to improperly induce property owners into adopting amendments to Eden Isle Subdivision's bill of assurance" and that "[t]he conduct beneficial to [Red Apple] was the proximate cause of damages to Plaintiff."

Windsong also alleged that Red Apple "manipulated [Eden Isle Corporation] into filing a third legal action against Windsong" in 2003 and "repeatedly refused to approve" three lot platting proposals by Windsong in 2008. Additionally, in a cause of action for nuisance, Windsong alleged that Red Apple used certain lots for "equipment storage" and for "burning rubbish" in violation of, or contrary to, "the restrictions and obligations found in the Amended and Restated Plat and Bill of Assurance for Eden Isle Subdivision." Windsong further alleged that Red Apple's use of the lots in the manner described also "unreasonably interfere[d] with the use and enjoyment of Plaintiff's individual property" and

9

"with the overall enjoyment of the common property of all property owners within the subdivision."

Windsong asserted that "Plaintiff seeks damages due to the intentional acts and improper interference as outlined in each and every paragraph previously stated and the causes of action that follow due to the actions of [the Red Apple] defendants." Windsong claims that as a result of Red Apple's actions, it had "been blocked from initiating development inside a recognized part of the subdivision for over twelve years" and had suffered damages, as follows:

> Windsong has suffered losses with regard to having to prosecute extensive litigation while not knowing of the potential litigation-changing fraud behind [the Red Apple defendants'] actions, the carry costs of maintaining undevelopable property, losses from planned construction and sales opportunities with which it has been unable to progress, diminished land values due to refusal to provide sewer service, damage to business and personal reputation, and otherwise all in an amount in excess of the amount required for federal court jurisdiction in diversity of citizenship cases.

As noted previously, to trigger a duty to defend on the part of AIC, Windsong's lawsuit had to allege facts that would come within the coverage of the policy. *Morrow Land Valley Co., LLC*, 2012 Ark. 247, at 9, 16, 411 S.W.3d at 190–91, 194. We turn now to the relevant terms of the policy under which Red Apple was insured. Under the policy's coverage part for commercial general liability, AIC was obligated to defend Red Apple as its insured (1) against any suit seeking damages for "property damage" to which the insurance applied and (2) against any suit seeking damages for "personal and advertising injury" to which the insurance applied.

10

Coverage A provided insurance against claims for "property damage." The policy defines the term "property damage" in pertinent part as "[l]oss of use of tangible property that is not physically injured." To trigger coverage under Coverage A, the damage must be caused by an "occurrence," which is defined in the policy as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." Relatedly, the policy contains an exclusion barring coverage for "'property damage' expected or intended from the standpoint of the insured."

AIC argues that Windsong's lawsuit did not claim any "loss of use" damages and therefore did not allege "property damage" to which the insurance applied. Rather, according to AIC, the lawsuit claimed only intangible economic losses in the form of loss of investments, anticipated profits, and financial interests. Red Apple contends that Windsong's nuisance claim alleged "loss of use" damages covered under Coverage A. AIC counters that even assuming Windsong claimed "loss of use" damages, it still did not allege "property damage" to which the insurance applied because the damages were attributable to Red Apple's deliberate actions and cannot be attributed to any accidental "occurrence." We agree.

The policy covers "property damage" only if the "property damage" is caused by an "occurrence." The policy defines "occurrence" as an "accident." The term "accident" is not defined in the policy. Our supreme court, however, has defined "accident" to mean "an event that takes place without one's foresight or expectation—an event that proceeds from an unknown cause, or is an unusual effect of a known cause, and therefore not expected."

11

*Columbia Ins. Grp., Inc. v. Cenark Project Mgmt. Servs., Inc.*, 2016 Ark. 185, at 7, 491 S.W.3d 135, 139 (quoting *United States Fid. & Guar. Co. v. Cont. Cas. Co.*, 353 Ark. 834, 845, 120 S.W.3d 556, 563 (2003)).

Red Apple's acts of storing equipment and burning rubbish, as alleged in Windsong's nuisance claim, cannot fairly be characterized as an "event" "from an unknown cause" or as "an unusual effect of a known cause." Windsong, moreover, alleged that these acts were done by Red Apple in violation of, or contrary to, the use restrictions in the subdivision's bill of assurance. "[K]nowing and intentional malfeasance" cannot take place "without foresight or expectation." *Guerin Contractors, Inc. v. Bituminous Cas. Corp.*, 5 Ark. App. 229, 233–34, 636 S.W.2d 638, 640 (1992). Accordingly, we conclude that with respect to Windsong's nuisance claim, any "loss of use" damages cannot be attributed to an "occurrence."

We further conclude that the same is true with respect to all the claims, including tort claims for fraud, negligence, and intentional interference with business expectancy, made in Windsong's lawsuit. A reading of the allegations in the pleadings shows that the gravamen of Windsong's action was that Red Apple fraudulently misrepresented and concealed the amount of acreage it owned in Eden Isle Subdivision to intentionally induce property owners into adopting amendments to the subdivision's bill of assurance. The essence of Red Apple's alleged conduct was that it intentionally brought about the events that caused Windsong's damages.

We note that the mere fact that Windsong attempted to plead a claim for negligence did not necessarily trigger a duty to defend on the part of AIC. *See Fisher v. Travelers Indem.*

12

*Co.*, 240 Ark. 273, 275, 398 S.W.2d 892, 893–94 (1966) (holding that use of the word "negligently" did not change the nature of tort action; the character of liability is determined by the quality and purpose of the transaction as a whole). Rather, it is evident from the allegations that Windsong's lawsuit sought damages for Red Apple's intentional harmful conduct. Windsong's complaint, in fact, unequivocally stated so. Accordingly, because Windsong's damages cannot be attributed to any accidental "occurrence," we conclude that the lawsuit did not allege "property damage" to which the insurance applied.

Coverage B provided insurance against claims for "'personal and advertising injury' caused by an offense arising out of your business but only if the offense was committed in the coverage territory during the policy period." In relevant part, the policy defines "personal and advertising injury" as an injury that arises out of one or more enumerated offenses, including, among others, (1) "malicious prosecution" and (2) "oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services." The policy contains an exclusion barring coverage for "'personal and advertising injury' caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict personal and advertising injury." The policy also excludes coverage for "'personal and advertising injury' arising out of oral or written publication of material, if done by or at the direction of the insured with knowledge of its falsity."

The circuit court found that a duty to defend arose, in part, from Windsong's allegations relating to malicious prosecution and damage to business and personal

reputation. Red Apple contended that these allegations would be covered under the policy as claims for "personal and advertising injury" damages. We disagree.

Regarding malicious prosecution, Windsong's complaint alleged that Red Apple "manipulated [Eden Isle Corporation] into filing a third legal action against Windsong" in 2003. As noted previously, the earliest effective date of the policy period was September 1, 2006. Coverage B provided insurance against claims for "personal injury" damages only if the offense was committed during the policy period. Any claim for "personal injury" damages caused by a malicious prosecution in 2003, therefore, would not be covered under the policy, as the offense was committed well outside the policy period.

As to Windsong's claim for damage to business and personal reputation—to the extent that it is separate from the allegations of malicious prosecution—the pleadings do not definitively state any enumerated offense from which a covered "personal and advertising injury" might arise. Red Apple, however, characterized the claim for damage to business and personal reputation as stemming from allegations of defamation. Because we must resolve any doubt in favor of the insured, we will assume that such a claim would be covered under the policy as a claim for "personal injury" damages. Nevertheless, because Windsong alleged that Red Apple intentionally inflicted damage to its business and personal reputation, we conclude that coverage would be excluded.

As noted previously, the policy contains exclusions barring coverage, in certain circumstances, both for "loss of use" damages and for "personal injury" damages. In the case of "loss of use" damages, coverage is barred for damage "expected or intended from the

14

standpoint of the insured." As to "personal injury" damages, the policy in pertinent part excludes coverage (1) for injury caused by an insured's knowing violation of another's rights and (2) for injury caused by an insured's publication of knowingly false material. For reasons already discussed, the nature of Windsong's action is evident—it sought damages for Red Apple's intentional wrongful conduct. That being the case, AIC had no duty to defend Red Apple in light of the above-described coverage exclusions.

IV. *Conclusion*

For the foregoing reasons, we conclude that the circuit court erred in finding as matter of law that AIC had a duty to defend Red Apple in the Windsong litigation. Accordingly, we must reverse. Because we hold that AIC had no duty to defend, AIC's remaining issues on appeal need not be addressed. Because we reverse the judgment, the issue on cross-appeal is moot.

Reversed on direct appeal; cross-appeal moot.

THYER and HIXSON, JJ., agree.

*Ledbetter, Cogbill, Arnold & Harrison, LLP*, by: *Victor L. Crowell*, for appellant/cross-appellee.

*Hankins Law Firm, P.A.*, by: *Stuart W. Hankins*, for appellees/cross-appellants.

15